IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LAFORTA - GESTÃO E INVESTIMENTOS, | § | Case No. 22-90126 (DRJ) |
| SOCIEDADE UNIPESSOAL LDA.,[1] | § | |
| | § | |
| Debtor. | § | |
| | § | |

**DECLARATION OF DAVID WEINHOFFER, CHIEF RESTRUCTURING OFFICER OF LAFORTA - GESTÃO E INVESTIMENTOS SOCIEDADE UNIPESSOAL LDA, IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, David Weinhoffer, Chief Restructuring Officer of LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda. ("LaForta" or the "Debtor"), hereby declare under penalty of perjury:

1. I am a Managing Director with the firm MACCO Restructuring Group, LLC ("MACCO"). I have served as the Chief Restructuring Officer of LaForta since June 14, 2022. MACCO has served as financial advisor to LaForta since June 8, 2022. I have over 39 years of experience in financial advisory restructuring and asset disposition services. This includes extensive experience in the maritime and energy exploration and production industries.

2. I am generally familiar with the Debtor's day-to-day operations, business, and financial affairs. I submit this declaration to assist the Court and parties in interest in understanding the circumstances that led to the commencement of this chapter 11 case and in support of: (a) the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on June 16, 2022 (the "Petition Date"); and (b) the emergency relief that the Debtor requested from the Court pursuant to the motions filed on the Petition Date (collectively, the "First Day Motions").

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's Foreign tax identification number, is: LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda. (Zona Franca da Madeira) (5988).

33023628v.6

3. All facts set forth in this Declaration are based upon my personal knowledge, my discussions with the Debtor's and its affiliates' managers and advisors (including the MACCO team working under my supervision and direction) and the Noteholder Group's advisors, my review of relevant documents and information concerning the Debtor's operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge. I am over the age of 18 and authorized to submit this declaration on behalf of the Debtor. If called upon to testify, I could and would testify to the facts set forth in this declaration.

## I. Introduction.

4. The Debtor filed its chapter 11 case because it has no money, no revenue stream, likely over $1 billion in secured debt, and an uncertain path to realizing value from a sole asset. The asset requires material investment and attention to maintain and return to an active operating state. The asset is *La Muralla IV*, a ten-year old, sixth-generation, ultra-deepwater semi-submersible drilling rig (the "La Muralla"). A photograph of *La Muralla* is below:



33023628v.6

5. *La Muralla* is not currently chartered. It is running low on fuel and has no liquidity with which to acquire more fuel. It does not have a functioning anchor (perhaps no anchor at all). It is under-crewed. It is currently prevented from moving by the harbormaster until a "no dispatch" order is resolved. It is uninsured. The Debtor, its parent, and certain of its noteholders have been working to find a solution for quite some time. At this point, there is no alternative to chapter 11.

6. This filing will enable LaForta to access essential financing to address its numerous issues and pursue a viable path for realizing value on its asset for the benefit of its creditors. The proposed DIP financing will provide funds to purchase fuel, reinstate insurance, and undertake functions necessary for the preservation of the noteholders' collateral before the hurricane season begins in earnest.

7. *La Muralla* has the potential to be an attractive target for maritime investors. The relief the Debtor seeks is essential to preserve and maximize its value for the benefit of all of the Debtor's stakeholders.

## II. Background.

8. LaForta is a private limited liability company organized under the laws of the Portugal. LaForta is a wholly owned subsidiary of non-debtor Offshore Drilling Holding S.A. ("ODH"), a private limited liability company incorporated under the laws of the Grand Duchy of Luxembourg. ODH is one business among several Mexico-based companies wholly or indirectly owned by ODH's ultimate owners. LaForta is one of three "sister" companies wholly owned by ODH that each hold a single ultra-deepwater semi-submersible drilling rig (the other companies' rigs are the *Centenario GR* and the *Bicentenario* (together with *La Muralla*, the "Rigs")). The following chart reflects the portion of the ODH capital structure relevant to the Indenture and the rigs:

3



9. All three Rig-owning companies and their subsidiaries are guarantors of $947 million in principal amount outstanding of 8.375% Senior Secured Notes due 2020 issued by ODH in 2013 (the "Secured Notes"). The Rigs are the collateral for the Secured Notes.[2]

---

[2] *LaMuralla* originally was subject to a mortgage in favor of a syndicate of banks that financed the purchase of the rig. Following the termination of the PEMEX charter, LaForta paid off the secured bank syndicated loan. Upon

4

33023628v.6

10. Historically, LaForta chartered *La Muralla* via a "bareboat" charter (where the vessel is provided without crew or provisions) to Rig Equipment Maritime, SPRL ("Rig Equipment"). Rig Equipment is a Belgium incorporated entity co-owned by LaForta and ODH. Rig Equipment entered into sub-charters for *La Muralla* with one of a couple operator entities that are outside the ODH structure and owned either in whole or in part by the ultimate owners of ODH, including Grupo R Perforación Marina, S.A. de C.V. ("GRPM") and Grupo R Exploración Marina, S.A. de C.V. ("GREMSA"). The operators managed operations on *La Muralla* when under charter contracts with exploration and production companies, which historically included PEMEX E&P, a wholly owned subsidiary of PEMEX, the national petroleum company of Mexico and, most recently, Shell Exploracion y Extraccion de Mexico S.A. de C.V. ("Shell"). After deduction of certain fees and operating expenses (including crew wages, utilities, and fuel), amounts paid by the E&P companies under the charters flowed through the operator to Rig Equipment and then back up the chain in the ODH corporate structure pursuant to the terms of the bareboat and sub-bareboat charters.

### III. Circumstances Leading to This Chapter 11 Case.

11. Following a reduction in charter fees for *La Muralla* in 2017, the PEMEX charter agreement for *La Muralla* was terminated in November 2019.[3] Shell chartered *La Muralla* for approximately five months ending in August 2021. *La Muralla* has otherwise not been generating revenue. *La Muralla* was not "stacked," but rather has been kept at or close to operational condition—though with reduced crew, operations, and expenditures—in hopes of rapidly deploying for a new charter.

---

the repayment of that loan in full, and as required under the terms of the Secured Notes indenture, LaForta acceded as a guarantor of the notes and granted a mortgage in connection with that guaranty.

[3] Similarly, the PEMEX charter agreements with respect to the *Centenario GB* and *Bicentenario* were terminated due to lack of budget and drilling opportunities. A sale of the *Centenario GB* is in process. The *Bicentenario* ran ashore in January 2022.

33023628v.6

12. ODH, LaForta, the other subsidiary guarantors, and an *ad hoc* group of Secured Notes holders (the "Noteholder Group"), have been engaged in discussions for several years regarding the best way to preserve and maximize value for stakeholders. The Secured Notes matured in September 2020, and have been in default since mid-2020.

13. About four years ago, the Noteholder Group engaged Rothschild & Co. to represent them. Over two years ago, they engaged Milbank LLP. At the time, the members of the Noteholder Group held over 50% of Secured Notes. Since then, certain members of the Noteholder Group advanced and accrued obligations of approximately $9 million to (a) engage advisors to (i) evaluate the Rigs' operational expenses, (ii) monitor the Rigs' operations, (iii) advise on preserving and maximizing the value of the Rigs, and (iv) discuss such issues with the Debtor and ODH and (b) recently, pay for fuel and advance funding necessary to prepare to commence this chapter 11 case. The participating noteholders took on these costs with the goals of preserving the Rigs and maximizing their value for the benefit of all holders of the Secured Notes. As of the Petition Date, the Noteholder Group includes holders of 45.7% of the Secured Notes, is in active contact with holders of an incremental 26.4% of Secured Notes, and has reached out to other noteholders as well. The Noteholder Group has been keeping other holders of the Secured Notes apprised of developments.

14. LaForta and the Noteholder Group are still soliciting a new charter for *La Muralla*. However, in light of the ongoing cash burn, they determined that LaForta required financing, which would not be available outside of bankruptcy, and that a sale of *La Muralla* through a chapter 11 case will best preserve and maximize value for all stakeholders.

IV. **The Debtor's and Rig's Current Situation.**

15. *La Muralla* currently sits in the Gulf of Mexico, approximately four miles off the coast of Tampico, Mexico:



16.     A skeleton crew of approximately seventeen workers, who are contracted by one of the operator entities, is aboard the *La Muralla* to monitor fuel levels and maintain the operational safety of the rig. This week, a small team from ABW, an advisor to the Noteholder Group, deployed to inspect *La Muralla* to determine what actions will be necessary to secure the rig and prepare it for sale. LaForta anticipates certain utilities—such as satellite communication, navigation, and weather-monitoring systems—may need to be restarted, certain infrastructure may need to be repaired or replaced, additional fuel will need to be purchased, and a tug service may need to be engaged. The ABW inspectors will board *La Muralla* once they pass certain COVID-19 protocols, which they are expected to clear by June 20th.

17.     Concurrently, the operators of the Rigs are working to finalize a settlement of certain past-due wage claims asserted by current and former crew members that worked on

33023628v.6

*La Muralla* and the other Rigs. LaForta anticipates that *La Muralla* will not be permitted to leave Mexican national waters until a resolution of these claims is reached.

18. LaForta and the Noteholder Group intend to move *La Muralla* to a port in the Bahamas in anticipation of a sale where it can better ride out approaching weather conditions in a more cost-effective and an appropriately resourced port. LaForta intends to begin a "load out" of crew and equipment in anticipation of the move. These and other actions are necessary to recertify *La Muralla* for transport. The load out is expected to take two-to-three weeks, with transit to occur soon after.

19. LaForta is also in the process of binding a new director and officer liability insurance policy and reinstating a previously lapsed (a) hull and machinery insurance policy and (b) protection and indemnity liability policy. The insurance policies will require completion of the load out and employment of additional crew members, all to be funded by the postpetition financing.

## V. The Proposed DIP Financing.

20. The Debtor's situation is challenged by severe liquidity constraints. LaForta has no revenue and no funds on hand. Therefore, certain members of the Noteholder Group (*i.e.*, the Backstop Lenders) agreed to provide (open to participation by all holders of Secured Notes) and backstop $33 million of new money postpetition financing to fund necessary operational expenses as well as chapter 11 and sale process expenditures.[4] The Budget includes funding for fuel, crew, supplies, and a cushion for needs that may become necessary due to weather conditions as we enter the hurricane season in the Gulf. The Budget also provides funding for the estate's advisors and D&O and operational insurance for LaForta and *La Muralla*.

---

[4] The key terms and conditions of the financing are described in the DIP Motion (defined below).

33023628v.6

21. The terms of the postpetition financing were negotiated at arm's length between LaForta, the Noteholder Group, and their respective advisors. I worked closely with Rothschild and other advisors to the Noteholder Group and LaForta to develop the Budget. Given the current condition of *La Muralla*—in particular, the lack of insurance, its condition after months without a charter, the inability to foreclose easily and cheaply in the event of a default, and known and unknown "unknowns" that may affect a final disposition of the rig—it is unlikely LaForta would be able to obtain financing from another source, let alone on better terms or in the timetable contemplated.

## VI. The Proposed Timeline for the Chapter 11 Case.

22. The Budget agreed to in connection with the postpetition financing provides for thirty days to (a) determine and address the operational issues necessary to prepare *La Muralla* for sale, including whether and how to move the rig to the Bahamas and how to recognize maximum value from *La Muralla*, and (b) begin to develop a proposed sale process and plan to address all claims against LaForta and *La Muralla*. The timeline can be extended if warranted by the circumstances.

23. The Debtor and Noteholder Group are driving toward a commercially reasonably swift sale process to be consummated in the Fall, absent a pivot to a new charter to an E&P company.

## VII. Evidentiary Support for the First Day Motions.

24. Along with this Declaration, LaForta filed the First Day Motions, seeking orders granting various forms of relief intended to facilitate the efficient administration of this chapter 11 case. The First Day Motions include:

- **DIP Motion**. Debtor's <u>Emergency</u> Motion for Entry of Interim and Final Orders (I) Authorizing Limited Use of Cash Collateral, (II) Obtaining Post-

    Petition Credit Secured by Senior Liens, (III) Granting Adequate Protection, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief.

- **Insurance Motion.** Debtor's <u>Emergency</u> Motion for Entry of an Order Authorizing the Debtor to Bind and Maintain Insurance Coverage.

- **Schedules and SOFAs Extension Motion.** Debtor's <u>Emergency</u> Motion for Entry of an Order (I) Extending Time to File (A) Schedules of Assets and Liabilities, (B) Schedules of Current Income and Expenditures, (C) Schedules of Executory Contracts and Unexpired Leases, (D) Statements of Financial Affairs, and (II) Granting Related Relief.

- **156(c) Retention.** Emergency Application for Entry of an Order Authorizing the Employment and Retention of Stretto, Inc. as Claims, Noticing, and Solicitation Agent.

25. I read and understand each of the First Day Motions and the relief requested therein. Based on my review, and to the best of my knowledge and belief, the factual statements contained in each of the First Day Motions are true and accurate and each such factual statement is incorporated herein by reference.

26. Additionally, the Debtor, with the assistance of its and the Noteholder Group's advisors, prepared a 13-week budget (the "<u>Budget</u>") in support of the proposed DIP Facility that takes into account payments to be made pursuant to the First Day Motions, if granted. I reviewed the Budget and concluded that it is reasonable in light of the Debtor's circumstances.

27. I believe that the relief requested in the First Day Motions is necessary, in the best interests of the Debtor's estate, its creditors, and all other parties in interest, and will allow the Debtor to operate with minimal disruption during the pendency of the chapter 11 case. Failure to grant the relief requested in any of the First Day Motions may result in immediate and irreparable harm to the Debtor, its asset, and its estate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  June 16, 2022                              /s/ *David Weinhoffer*
                                                                         David Weinhoffer
                                                                         Chief Restructuring Officer
                                                                         LaForta - Gestão e Investimentos,
                                                                         Sociedade Unipessoal, Lda

33023628v.6