# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LAFORTA - GESTÃO E INVESTIMENTOS, | § | Case No. 22-90126 (DRJ) |
| SOCIEDADE UNIPESSOAL LDA.,[1] | § | |
| | § | |
| Debtor. | § | (Emergency Relief Requested) |
| | § | |

## DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING (I) POST-PETITION FINANCING SECURED BY SENIOR LIENS, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF

> **Emergency relief has been requested. Relief is requested not later than June 17, 2022 at 9:00 a.m.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on June 17, 2022 at 9:00 a.m. (prevailing Central Time) in Courtroom 400, 4th Floor, 515 Rusk Street, Houston, TX 77002.**
>
> **Participation at the hearing will only be permitted by audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones' home page. The meeting code is "JudgeJones." Click the settings icon in the upper right corner and enter your name under the personal information setting. Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones' home page. Select the case name, complete the required fields and click "Submit" to complete your appearance..**

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's Foreign tax identification number, is: LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda (Zona Franca da Madeira) (5988).

The above-captioned debtor and debtor in possession (the "Debtor" or "LaForta") respectfully states the following in support of this motion (this "Motion"):[2]

### Preliminary Statement

1. The Debtor has determined it is in the best interest of the estate to sell its lone asset, the *La Muralla IV* (the "Rig"). The Rig is a ten-year old sixth-generation, semi-submersible drilling rig. The Debtor intends to sell the Rig through a section 363 sale. Currently, the Rig is "parked" in the Gulf of Mexico. The Rig has not operated under a charter for approximately eleven (11) months and during this time the Debtor has been unable to obtain a new charter agreement or otherwise monetize the Rig. However, the Rig is not stacked (*i.e.*, it remains in an operational state) and approximately seventeen (17) workers are on board.

2. The Debtor simply does not have funding (absent the DIP Facility) to maintain safe operation of the Rig. Despite recent fuel purchases using the Prepetition Advances (described below) the Rig has only a few days of fuel remaining (assuming good weather) and the Debtor does not have the resources to purchase any more fuel to keep the Rig and the workers on board safe. This is especially important as the Rig does not currently have a working anchor, so it is reliant on its own propulsion system to maintain a safe position (this is not just a theoretical risk as a similar rig, owned by a sister company to the Debtor, recently ran aground). Additionally, the Debtor's hull, machinery, liability, and D&O insurance have lapsed and while the Debtor is binding new or renewed coverage, it needs the proceeds of the DIP Facility to pay for these policies and ensure coverage can begin as of the Petition Date. The fact that hurricane season has just

---

[2] The detailed description of the Debtor and its business, and the facts and circumstances supporting this Motion and the Debtor's Chapter 11 cases, are set forth in greater detail in the *Declaration of David Weinhoffer, Chief Restructuring Officer of LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda, In Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtor's voluntary petitions for relief filed under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), on June 16, 2022 (the "Petition Date").

begun makes the Rig's current situation all the more precarious and highlights the need to properly secure the Rig—which can only occur if the Debtor obtains access to the DIP Financing.

3. In addition to fuel and insurance, the Debtor intends to immediately begin to use the DIP Financing to make necessary repairs to the Rig so that it can be moved from its current position to a port in the Bahamas where it can safely be more fully repaired and can remain while a sale process is conducted. The DIP Financing will provide the Debtor the liquidity needed to preserve and stabilize the Rig, move it to an appropriate location, and conduct a value-maximizing sale process. Absent access to the DIP Financing, the Debtor will have absolutely no liquidity and no ability to protect the Rig, the workers on the Rig, or vessels, property, and natural resources near the Rig.

4. The Debtor believes the DIP Financing is its only viable path forward and given the risks inherent in its asset and business plan, the terms and conditions of the DIP Financing are clearly fair and reasonable, and entering into the DIP Financing is a sound exercise of its business judgment.

**Jurisdiction and Venue**

5. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

**Relief Requested**

8. The Debtor seeks entry of an interim order, substantially in the form of the proposed interim order filed with this Motion (the "Interim Order"), and a final order (the "Final Order," and, together with the Interim Order, the "DIP Orders"):

    a. authorizing Debtor (the "DIP Borrower") to obtain senior secured, postpetition financing on a priming, superpriority basis from GLAS USA LLC as administrative agent and GLAS Americas LLC as collateral agent (collectively, the "DIP Agent") and the DIP Lenders (together with the DIP Agent, the "DIP Secured Parties") pursuant to the term sheet attached to the Interim Order as **Exhibit 1** by and among the DIP Borrower, the DIP Lenders from time to time party thereto, and the DIP Agent (as subsequently amended, restated, or otherwise modified from time to time, the "DIP Term Sheet"), in an aggregate principal amount not to exceed $66 million (the "DIP Commitment"), and including, without limitation, principal, interest, fees, expenses, and other costs of the DIP Agent and the DIP Lenders in this bankruptcy case (the "Chapter 11 Case"), in accordance with the terms and conditions set forth herein and in the DIP Term Sheet (the "DIP Financing");

    b. authorizing the Debtor to enter into, execute, deliver and perform under the DIP Financing and the DIP Term Sheet, granting or perfecting liens or security interests by the Debtor in favor of and for the benefit of the DIP Agent and the DIP Lenders on account of the DIP Financing Agreement, as the same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all agreements and documents currently executed or to be executed in connection therewith or related thereto, by and among the Debtor, the DIP Agent and the DIP Lenders, the terms of which are referenced and incorporated herein as if fully set forth herein (collectively, the "DIP Documents");

    c. approving the terms and conditions of the DIP Financing, including the DIP Term Sheet and the other DIP Documents;

    d. granting valid, enforceable, non-avoidable, and automatically fully perfected priming liens on, and security interests in, the DIP Collateral (as defined below) to the DIP Secured Parties to secure all obligations (the "DIP Obligations") pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code;

    e. granting allowed superpriority administrative claims to the DIP Secured Parties with respect to the DIP Obligations pursuant to section 364(c)(1) of the Bankruptcy Code;

    f.    authorizing the Debtor to grant Adequate Protection (as defined below) to the Prepetition Bondholders under or in connection with the following agreements:

        i.    that certain Indenture dated as of September 20, 2013 among Offshore Drilling Holding S.A. (as "Issuer") and Deutsche Bank Trust Company Americas as Trustee and Noteholder Collateral Agent (the "Trustee and the Noteholder Collateral Agent") and the Guarantors party thereto (as amended by the First Supplemental Indenture dated as of January 20, 2020, the Second Supplemental Indenture dated as of March 17, 2020, the Third Supplemental Indenture dated as of April 28, 2020, the Fourth Supplemental Indenture dated as of May 5, 2020, the Fifth Supplemental Indenture dated as of June 2, 2020, the Sixth Supplemental Indenture dated as of June 23, 2020, the Seventh Supplemental Indenture dated as of July 7, 2020, the Eighth Supplemental Indenture dated as of July 28, 2020, and the Ninth Supplemental Indenture dated as of August 11, 2020, the "Indenture") and together with all agreements, mortgages, pledges, charges, joinders, fee letters, and any other agreements or documents delivered in connection therewith, the "Prepetition Notes Documents" and the obligations thereunder, the "Prepetition Notes Obligations");

    g.    approving certain stipulations of the Debtor with respect to the Prepetition Obligation Documents, the Prepetition Obligations, and the liens and security interests granted with respect thereto;

    h.    modifying the automatic stay of section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent set forth herein and in the DIP Documents, and providing for the immediate effectiveness of this Interim Order; and

    i.    scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis, approving the relief granted herein on a final basis, and authorizing the Borrower to borrow from the DIP Lenders under the DIP Documents up to the full amount of the DIP Financing.

**Background Relevant to this Motion**

**A.**    **The Debtor's Prepetition Capital Structure.**

9.    As of the Petition Date, the Debtor has the following indebtedness:

- Approximately $947 million principal outstanding with respect to the Prepetition Bonds, plus accrued and unpaid interest and other charges and fees, which is secured by substantially all of the Debtor's assets.

5

10.     In 2013, the Debtor's parent, Offshore Drilling Holding S.A. ("ODH"), issued $950 million in bonds (the "Prepetition Bonds") pursuant to Indenture. Pursuant to the First Supplemental Indenture, LaForta became a guarantor of the Prepetition Bonds and simultaneously pledged substantially all of its assets as collateral under the Prepetition Notes Documents. The Prepetition Bonds matured on September 20, 2020.

11.     ODH began discussions with a group of its bondholders (the "Noteholder Group") more than two years ago regarding the Prepetition Bonds and the issues facing ODH and its subsidiaries, including LaForta. During these years of negotiations, the Noteholder Group and agreed to numerous amendments to the Indenture, and worked with ODH to explore a variety of restructuring options for the ODH group, including LaForta and the Rig. Members of the Noteholder Group advanced and accrued obligations of approximately $9 million to (a) engage advisors to (i) evaluate the Rigs' operational expenses, (ii) monitor the Rigs' operations, (iii) advise on preserving and maximizing the value of the Rigs, and (iv) discuss such issues with the Debtor and ODH and (b) recently, pay for fuel and advance funding necessary to prepare to commence this chapter 11 case (collectively, such payments, advances and accruals, the "Prepetition Advances"). This week a small team from ABW Vessel Management Ltd., an advisor to the Noteholder Group, deployed to inspect the Rig to determine what actions will be necessary to secure the Rig and prepare it for sale.

12.     It is critical that the Rig maintains certain health and safety standards for the benefit of its onboard crew, the local population, and the environment. Keeping the Rig in fair condition also ensures that maximum value can be received upon its disposition for all interested parties. The Prepetition Advances were essential to getting the Debtor to this point as safely as possible while exploring all possible restructuring options.

13.     The Debtor and the current members of the Noteholder Group, who have agreed to backstop the DIP Facility (in such capacity the "<u>Backstop Lenders</u>"), negotiated the terms of the proposed financing (the "<u>DIP Financing</u>") at arm's length and in good faith.  The proceeds of the DIP Financing (the "<u>DIP Proceeds</u>") shall be used to preserve and stabilize the Rig before the upcoming hurricane season, obtain needed insurance, fund this case, and to conduct a marketing process for the Debtor's sole asset—the Rig.

14.     The Rig is currently floating in the Gulf of Mexico without an anchor and requires significant quantities of fuel to stay in place.   The DIP Proceeds will be used as set forth in the thirteen (13)-week budget attached as **Exhibit A** to the DIP Term Sheet.

15.     The Debtor is not able to secure DIP financing on terms more favorable than those proposed.  Financing a debtor in possession loan on the open market was not feasible in this case.  There are no unencumbered assets.  The Debtor's sole substantial asset presents challenges for parties not already involved to utilize as collateral.  Additionally, the need to file is immediate.  There is simply no time to do a fulsome marketing process for a debtor in possession facility other than with an existing lenders.  The terms of the DIP Loan are fair and reasonable, even though the Debtor has no other financing options.  The DIP Loan is the best available financing.

16.     The Debtor seeks authorization to obtain postpetition financing pursuant to the terms set forth in this Motion, the DIP Financing Agreement, and the DIP Orders.  Debtor may borrow up to an aggregate principal amount of $47 million of the DIP Proceeds (consisting of $23.5 million of "new money" and $23.5 million of roll up) immediately following the entry of, and on the terms set forth in, the Interim Order.

17.     The only viable (and available) source of financing is the DIP Financing.  The Debtor's sole asset is encumbered by a first-priority lien in favor of the Prepetition Bondholders.

The Debtor is unable to attain (i) adequate unsecured credit allowable either (x) under sections 364(b) and 503(b)(1) of the Bankruptcy Code, or (y) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of its estate under section 364(c)(2) of the Bankruptcy Code, and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Lenders on terms more favorable than the terms of the DIP Financing.

18. The proposed DIP Financing will enable the Debtor to transition smoothly into chapter 11 and effectively finance the case at a reasonable cost to the estate. Providing the DIP Lenders with the protections described in this Motion is reasonable and appropriate, as it will allow the Debtor to obtain the critical financing it needs to fund its operations, preserve its asset, and provide assurances to all interested parties that the Debtor has sufficient liquidity to repair, market, and sell the Vessel during the pendency of this case.

19. The DIP Financing is essential to the continued operation of the Debtor's business and the Debtor's efforts to repair, market, and sell the Vessel. The Debtor requests that the Court authorize the Debtor to enter into the proposed DIP Financing.

B. **The Debtor's Immediate Need for Debtor-in-Possession Financing.**

20. The Debtor requires access to the DIP Financing to ensure it is able to continue operating during the chapter 11 case and preserve the value of its estate for the benefit of all parties in interest. The Rig is not currently on charter. Thus, no cash is being generated by the Debtor. Therefore, it is unable to generate operating cash flow in the ordinary course of business to cover its working capital needs and the projected costs of the chapter 11 case without debtor-in-possession financing. The Debtor, led by its Chief Restructuring Officer and in consultation with MACCO Restructuring Group ("MACCO") and advisors to the Noteholder Group, reviewed and

analyzed the Debtor's projected cash needs and prepared a Budget (as updated from time to time in accordance with the DIP Financing Agreement) outlining the Debtor's postpetition cash needs during the anticipated length of the chapter 11 case. The Debtor believes the Budget is an accurate reflection of its funding requirements over the identified period, will allow it to meet its obligations, and is reasonable and appropriate under the circumstances.

21. Immediate and ongoing access to funding under the DIP Financing will allow the Debtor to stabilize the Rig, make necessary repairs to preserve and enhance the value of the estate's primary asset, and conduct a marketing and sale process.

22. The Debtor's estate will be immediately and irreparably harmed absent approval of the Interim Order and the granting of access to the DIP Financing. Immediately prior to filing, the Debtor, with assistance from its advisors, opened a new U.S.-based bank account at Metropolitan Commercial Bank in New York (the "<u>DIP Account</u>").[3] The DIP Proceeds will be funded into the DIP Account within 1 day of entry of the Interim Order. Without immediate access to the DIP Proceeds in the Bank Account, the Debtor will not be able to stabilize the Rig or make repairs in advance of the upcoming hurricane season which puts the estate's asset in jeopardy. Failure to make repairs will also create a health and safety concern for both the crew of the Rig and the surrounding area in general. The Debtor's need for access to postpetition financing on the terms set forth in the DIP Financing Agreement and the DIP Orders is immediate and urgent.

23. It is not possible to administer this case without postpetition financing. The DIP Financing will provide the necessary liquidity to implement the sale of the Rig. The DIP Financing represents the most favorable financing available. The DIP Financing will provide the Debtor with

---

[3] The Debtor's two prepetition bank accounts were pledged as collateral to secure the Prepetition Notes Obligations and contain *de minimis* amounts.

immediate access to the liquidity that is necessary to stabilize, repair, and monetize the Rig, as well as fund this chapter 11 case. The DIP Financing is in the best interests of the Debtor's estate and the Debtor requests that the Court approve the DIP Financing on the terms and conditions described herein.

**Basis for Relief**

A.  **The Debtor Should Be Authorized to Obtain Postpetition Financing under Section 364 of the Bankruptcy Code.**

24. It is essential that the Debtor obtains access to sufficient postpetition financing to avoid immediate and irreparable harm to its businesses. The preservation of estate assets, the Debtor's continuing viability and its ability to maximize value for stakeholders depends heavily upon the expeditious approval of the relief requested.

25. Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course of business and (c) obtaining credit with specialized priority or with security. *See* 11 U.S.C. § 364. If a debtor in possession cannot obtain postpetition credit on an unsecured basis, pursuant to section 364(b) of the Bankruptcy Code, a court may authorize a debtor to obtain credit or to incur debt, the repayment of which is entitled to superpriority administrative expense status, or is secured by a senior lien on unencumbered property, or a junior lien on encumbered property, or a combination of the foregoing. *See* 11 U.S.C. § 364(c). In addition, pursuant to section 364(d) of the Bankruptcy Code, a court may authorize a debtor to obtain postpetition credit secured by a lien that is equal or senior in priority to existing liens on encumbered property (*i.e.*, a "priming" lien) when a debtor is unable to obtain credit on other terms and the interests of existing lienholders are adequately protected, or if the existing lienholders consent to such priming.

26. The Debtor proposes to obtain financing that will "prime" certain of the Debtor's Prepetition Obligations. Therefore, the approval of the DIP Financing is governed by both sections 364(c) and 364(d) of the Bankruptcy Code.

   a. **The Debtor Satisfied the Conditions Under Section 364(c) to Obtain Financing on a Senior Secured and Superpriority Basis.**

27. The Debtor proposes to obtain financing under the DIP Financing, in part, by providing superpriority claims and liens pursuant to section 364(c) of the Bankruptcy Code. Significantly, the Debtor proposes to provide first priority liens on substantially all of the Debtor's assets, which is primarily the Rig.

28. In the event that a debtor demonstrates that it is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, section 364(c) provides that a court:

> may authorize the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c). *see also In re Crouse Grps., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

29. Courts have articulated a three-part test to determine whether a debtor is entitled to financing pursuant to section 364(c) of the Bankruptcy Code. Specifically, courts look to whether:

   a. the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code (*i.e.*, by allowing a lender only an administrative claim);

   b. the credit transaction is necessary to preserve the assets of the estate; and

   c. the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders.

*See In re Ames Dep't Stores*, 115 B.R. 34, 37–40 (Bankr. S.D.N.Y. 1990).

      **b.      The Debtor Would Be Unable to Obtain Necessary Postpetition Financing on an Unsecured Basis.**

30.      To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986). In circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *Sky Valley, Inc.*, 100 B.R. at 113; *see also In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986).

31.      The Debtor determined that it was necessary to obtain postpetition financing to fund the stabilization, repair, and monetization of the Rig and to pay the administrative costs of the chapter 11 case. The Debtor is not able to secure DIP financing on terms more favorable than those proposed. Financing a debtor in possession loan on the open market was not feasible in this case. There are no unencumbered assets, foreclose on the estate's primary asset is extremely difficult, and there is risk inherent in the proposed bankruptcy and sale processes. Additionally, the need to file is immediate and there is simply no time to do a fulsome marketing process for a debtor in possession facility other than with an existing lender. The terms of the DIP Loan are reasonable, even though the Debtor has no other financing options. The DIP Loan is the best—and the ***only***—available financing.

32.      The DIP Financing structure, including the 1:1 roll up, the waivers, and the fees detailed in the DIP Term Sheet, is appropriate in light of the Debtor's financing, the lack of viable alternatives, and pressing need for funding.

      i.      ***The DIP Financing is Necessary to Preserve and Protect the Assets of the Debtor's Estate.***

33.    It is essential that the Debtor immediately obtain the financing necessary to preserve and protect the value of its estate. The Debtor needs funding to stabilize, repair, and monetize the Rig. Failure to do so could create a health and safety concern for the crew on board the Rig and for the surrounding area, especially as hurricane season approaches. The DIP Proceeds will also be used to fund this chapter 11 case which will preserve and maximize estate value. The DIP Financing is necessary to protect the value of the Debtor's assets. *See Burtch v. Ganz (In re Mushroom Transp. Co.)*, 382 F.3d 325, 339 (3d Cir. 2004).

      ii.      ***The Terms of the DIP Financing are Fair, Reasonable, and Appropriate under the Circumstances.***

34.    In considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances and disparate bargaining power of both the debtor and the potential lender. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003).

35.    The terms of the DIP Financing Agreement and the proposed Interim Order and Final Order were negotiated in good faith and at arm's-length between the Debtor and the DIP Lenders.

      iii.      ***The Debtor Should be Authorized to Obtain Priming Liens Under Section 364(d) of the Bankruptcy Code.***

36.    Section 364(d) provides that a debtor may obtain credit secured by a senior or equal lien on property of the estate already subject to a lien where the debtor is "unable to obtain such credit otherwise" and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1). Accordingly, the Debtor may incur "priming" liens under the DIP Financing if it is

13

unable to obtain unsecured or junior secured credit and either (a) the affected secured lenders consent, or (b) adequate protection exists for such priming lien.

37. The Debtor is unable to obtain other financing and has proposed adequate protection liens for the Prepetition Bonds. The proposed DIP Financing is appropriate under the circumstances. Further, approximately 45.7% of the Prepetition Bondholders have consented to the Priming Liens as they are also the DIP Lenders.

### iv. *The DIP Financing is in the Best Interests of the Debtor's Estate and Creditors.*

38. Approval of the DIP Financing is in the best interests of the Debtor's estate and its creditors. Given that the Debtor does not currently have any other executable options for financing in the chapter 11 case that would permit the Debtor to remain viable, the Debtor, in the exercise of its sound business judgment, believes that it has negotiated for the best possible terms of the DIP Financing. The DIP Financing is unquestionably in the best interest of its estate and creditors.

**B.  Entering into the DIP Financing Is an Exercise of the Debtor's Sound Business Judgement.**

39. The Court should authorize the Debtor, in an exercise of its sound business judgment, to enter into the DIP Documents, obtain access to the DIP Financing, to the extent that it comes into existence during the pendency of this case. Courts grant considerable deference to a debtor's business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g.*, *In re N. Bay Gen. Hosp., Inc.*, No. 08-20368 (Bankr. S.D. Tex. July 11, 2008) (order approving postpetition financing on an interim basis as exercise of Debtor's business judgment).

40. Specifically, to determine whether a debtor has met this business judgment standard, a court need only "examine whether a reasonable business person would make a similar

14

decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006).

41. Further, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003).

42. The Debtor's decision to move forward with the DIP Financing is a sound exercise of its business judgment. The Debtor and its advisors determined that the Debtor would require postpetition financing as described in this Motion. The Debtor negotiated the DIP Documents with the DIP Lenders in good faith, at arm's length, and with the assistance of its advisors, and the Debtor believes that it has obtained the best financing available. The Court should authorize the Debtor's entry into the DIP Documents as a reasonable exercise of the Debtor's business judgment.

C. **The Debtor Should Be Authorized to Pay the Fees Required by the DIP Agent and the DIP Lenders Under the DIP Documents.**

43. The fees and charges to be paid to the DIP Lenders and DIP Agent, as expressly provided in the DIP Term Sheet, are reasonable and appropriate under the circumstances. Such fees are often permitted where the associated financing is, in the Debtor's business judgment, beneficial to the Debtor's estate. *See In re Aleris Int'l Inc.*, No. 09-10478 (Bankr. D. Del. Mar. 18, 2009).

D. **The DIP Agent and the DIP Lenders Should Be Afforded Good-Faith Protection Under Section 364(e) of the Bankruptcy Code.**

44. Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

45. The DIP Financing is the result of the Debtor's reasonable and informed determination that the DIP Lenders offered the most favorable terms on which to obtain vital postpetition financing, extensive arm's-length, good-faith negotiations between the Debtor and the DIP Lenders, and several proposals and counterproposals. The terms and conditions of the DIP Financing are reasonable and appropriate under the circumstances, and the proceeds of the DIP Financing will be used only for purposes that are permissible under the Bankruptcy Code. The Court should find that the obligations arising under the DIP Financing and other financial accommodations made to the Debtor has been extended by the DIP Agent and the DIP Lenders in "good faith" within the meaning of section 364(e) of the Bankruptcy Code, and therefore the DIP Agent and DIP Lenders are entitled to all of the protections afforded thereby.

**E.     The Automatic Stay Should Be Modified on a Limited Basis.**

46. The Interim Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to allow the Debtor, the DIP Agent, and the DIP Lenders to commit all acts and take all actions necessary to implement the DIP Financing and all acts, actions, and transfers contemplated herein. Further the proposed Interim Order provides that the automatic stay shall be vacated and modified, subject to certain limitations, to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise certain remedies upon the occurrence of an event of default by the Debtor under the DIP Documents.

47. Stay modifications of this kind are ordinary and standard features of debtor-in-possession financing arrangements, and, in the Debtor's business judgment, are reasonable and fair under the circumstances of the chapter 11 case.

F. **Failure to Obtain Immediate Interim Access to the DIP Credit Facility Would Cause Immediate and Irreparable Harm.**

48. Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court may conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

49. The Debtor requests that the Court hold and conduct a hearing to consider entry of the Interim Order authorizing the Debtor to access the DIP Financing on an interim basis pending the Final Hearing. The Debtor requires access to the DIP Financing prior to the Final Hearing and entry of the Final Order to continue operating, pay its administrative expenses, to implement the relief requested in the Debtor's other "first day" motions. This relief will enable the Debtor to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing.

## Request for Final Hearing

50. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable and not later than 30 days after the Petition Date, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

**Emergency Consideration**

51.     The Debtor requests emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." The Debtor believes an immediate and orderly transition into chapter 11 is critical to the viability of its proposed restructuring and that any delay in granting the relief requested could hinder the Debtor's operations and cause irreparable harm. The Debtor has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

52.     The Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h) in order to implement the foregoing.

**Reservation of Rights**

53.     Nothing contained herein is intended or should be construed as: (a) an admission as to the validity or priority of any claim or lien against the Debtor; (b) a waiver of the Debtor's rights to subsequently dispute such claim or lien on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**Notice**

54. The Debtor will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) entities listed as holding the 30 largest unsecured claims against the Debtor (if any); (c) counsel to the DIP Lenders via email; (d) counsel to the DIP agent, GLAS, via email; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Attorney General of Texas; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor requests that the Court enter the interim order, substantially in the form filed with this Motion, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

| | |
|---|---|
| June 16, 2022 | /s/ *Rebecca Blake Chaikin* <br> Rebecca Blake Chaikin (S.D.T.X. Bar No. 3394311) <br> Genevieve M. Graham (TX Bar No. 24085340) <br> Veronica A. Polnick (TX Bar No. 24079148) <br> Javier Gonzalez (TX Bar No. 24119697) <br> **JACKSON WALKER LLP** <br> 1401 McKinney Street, Suite 1900 <br> Houston, Texas 77010 <br> Telephone: (713) 752-4200 <br> Facsimile: (713) 752-4221 <br> rchaikin@jw.com <br> ggraham@jw.com <br> vpolnick@jw.com <br> jgonzalez@jw.com <br><br> **PROPOSED COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION** |

19

## Certificate of Service

      I certify that on June 16, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                /s/ *Rebecca Blake Chaikin*
                                                Rebecca Blake Chaikin