United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 06, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LAFORTA - GESTÃO E INVESTIMENTOS, | § | Case No. 22-90126 (DRJ) |
| SOCIEDADE UNIPESSOAL LDA.,[1] | § | |
| | § | |
| Debtor. | § | **Re: Docket No. 92** |
| | § | |

**ORDER (I) APPROVING THE BID PROCEDURES, (II) SCHEDULING
THE BID DEADLINES, AUCTION, AND SALE HEARING AND APPROVING
NOTICE THEREOF, (III) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES AND NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF**

LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda (the "Debtor") filed its

motion (the "Motion")[2] for the entry of an order (this "Order") (a)  approving the Bid Procedures,

(b) establishing the dates and deadlines set forth in the Bid Procedures, including the Bid Deadline,

Auction, and Sale Hearing, (c) authorizing and approving the form of Sale Notice, (d) approving

the Assumption and Assignment Procedures for the Designated Contracts (if any), (e) approving

the form of Assignment Notice, and (f) granting related relief, as more fully set forth in the Motion.

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant

to 28 U.S.C. §§ 1408 and 1409.  The Motion is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and the Court may enter a final order on the Motion.  The relief requested in the

Motion is in the best interests of the Debtor, its estate, stakeholders, and other parties in interest

and the Debtor gave sufficient and proper notice of the Motion and related hearings under the

circumstances.  Upon consideration of the Motion and any evidence or arguments in support of

---

[1]   The Debtor in this chapter 11 case, along with the last four digits of the Debtor's Foreign tax identification
      number, is:  LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda (Zona Franca da Madeira) (5988).

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the relief requested at the hearing before the Court on September 6, 2022 (the "Hearing"), the Court finds that good cause exists to grant the requested relief.  **It is therefore FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Bid Procedures attached hereto as **Exhibit A** are fair, reasonable, and appropriate, and are designed to promote participation and active bidding and ensure that the highest or otherwise best value is generated for the Assets.  The Bid Procedures were negotiated at arm's length, in good faith, and without collusion.

C.      The Assumption and Assignment Procedures attached hereto as **Exhibit C** are fair, reasonable and appropriate and comply with the provisions of Bankruptcy Code section 365.

D.      The Debtor has demonstrated a compelling and sound business justification for this Court to enter this Order, including, without limitation, to approve the Bid Procedures and the Assumption and Assignment Procedures and to establish the dates and deadlines set forth in the Bid Procedures.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the Hearing, are incorporated herein by reference and, among other things, form the basis for the Court's findings of fact and conclusions of law herein.

E.      The Sale Notice attached hereto as **Exhibit B** and Assignment Notice attached hereto as **Exhibit D** are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bid Procedures (including the Bid Deadline, the Auction, and the Sale

2

Hearing), the Assumption and Assignment Procedures, the Sale, the Designated Contracts (if any) and related cure amounts, and all relevant and important dates and deadlines with respect to the foregoing, and no other or further notice of the Sale, the Auction, or the assumption and assignment of Designated Contracts in connection therewith shall be required.

**IT IS ORDERED THAT:**

1. Any and all objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are overruled and denied on the merits with prejudice.

2. The Bid Procedures attached hereto as **<u>Exhibit A</u>** are fully incorporated herein and approved in their entirety.  All dates and deadlines set forth in the Bid Procedures are hereby established, including:

  a. **October 26, 2022**, at **12:00 p.m.** (prevailing Central Time) as the Bid Deadline;

  b. **November 2, 2022**, at **10:00 a.m.** (prevailing Central Time) as the Auction (if needed); and

  c. **November 15, 2022**, at **12:00 p.m.** (prevailing Central Time) as the Sale Hearing.

3. The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to any proposed sale of the Assets and the conduct of the Auction and sale of the Assets. Any party desiring to bid on the Assets shall comply with this Order, including the Bid Procedures. The Debtor is authorized to take all actions as are necessary or appropriate to implement the Bid Procedures and otherwise effectuate the relief granted in this Order.

4. Pursuant to the Final DIP Order, the Debtor has stipulated to the amount, nature, extent, validity, and perfection of the secured claims of the DIP Lenders and the Noteholder Secured Parties and each has the right under section 363(k) of the Bankruptcy Code to credit bid

the full dollar amount of all Obligations then outstanding.  Notwithstanding the foregoing, as set forth in the Bid Procedures, the Backstop Lenders, on behalf of the DIP Lenders and/or Noteholders, as the case may be, shall not submit a credit bid in excess of the applicable Credit Bid Cap established by the Backstop Lenders.  The Debtor shall disclose the Credit Bid Caps established by the Backstop Lenders no later than **September 27, 2022** by filing a notice with the Court.  The Backstop Lenders shall identify the applicable Credit Bid Cap by **October 24, 2022 at 9:00 A.M. (prevailing Central time)**.

5.      The form of the Sale Notice attached hereto as **<u>Exhibit B</u>** is approved.  The failure to specifically include a reference to any particular provision of the Bid Procedures in the Sale Notice shall not diminish or impair the effectiveness of such provision.  The Debtor is authorized to serve the Sale Notice on all known parties in interest in the chapter 11 case and, as soon as reasonably practicable, publish the Sale Notice in the *Houston Chronicle* and *TradeWinds*.

6.      Objections to any Sale, including any objection to (a) the sale of any Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests pursuant to Bankruptcy Code section 363(f), (b) the Winning Bidder's adequate assurance of future performance, (c) the proposed assumption and assignment of any executory contract or unexpired lease (including any proposed cure cost), and/or (d) entry of any Sale Order, must (x) be in writing and specify the nature of such objection, (y) comply with the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules and all orders of the Court; and (z) be filed with the Court by **November 11, 2022**, at **4:00 p.m.** (prevailing Central Time).

7.      If any party fails to file an objection by the foregoing deadline, such party shall be (a) barred from asserting any objection to the relief requested in the Motion or to the consummation of the Sale, including the transfer of the Assets to the Winning Bidder free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests pursuant to

Bankruptcy Code section 363(f) and (b) deemed to consent to such "free and clear" sale for purposes of Bankruptcy Code section 363(f).

8.      The Assumption and Assignment Procedures attached hereto as **<u>Exhibit C</u>** are fully incorporated herein and approved in their entirety.

9.      The form of the Assignment Notice attached hereto as **<u>Exhibit D</u>** is approved.  The Debtor is authorized to serve the Assignment Notice on all non-Debtor counterparties to Designated Contracts (if any).  The inclusion of a contract in any list of Designated Contracts or an Assignment Notice shall not (a) obligate the Debtor to assume or assign such contract or (b) constitute any admission or agreement by the Debtor that such contract is an executory contract.  Only those contracts that are included on a schedule of assumed and acquired contracts attached to definitive documentation in the Sale that is approved by the Sale Order will be assumed and assigned.

10.     All persons or entities (whether or not a Qualified Bidder) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

11.     All parties in interest shall receive or be deemed to have received good and sufficient notice of the Motion and of the Auction, and no further notice of the foregoing shall be required except as expressly set forth herein.

12.     Notice of the Motion as provided therein is good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed:  September 06, 2022.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**<u>Exhibit A</u>**

**Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LAFORTA - GESTÃO E INVESTIMENTOS, | § | Case No. 22-90126 (DRJ) |
| SOCIEDADE UNIPESSOAL LDA.,[1] | § | |
| | § | |
| Debtor. | § | |
| | § | |

**BID PROCEDURES**

On July 16, 2022 (the "Petition Date"), the above-captioned debtor and debtor in possession (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

On September 6, 2022, the Court entered the *Order (I) Approving  the Bid Procedures (II) Scheduling the Bid Deadlines, Auction, and Sale Hearing and Approving Notice Thereof, (III) Approving Assumption and Assignment Procedures and Notice Thereof, and (IV) Granting Related Relief* [ECF No. [●]] (the "Bid Procedures Order"), which approved the procedures set forth below pursuant to which the Debtor is authorized to sell all or substantially all of the Debtor's assets (the "Bid Procedures").[2]

## I.     OVERVIEW

### a.     Assets to be Sold

The Debtor is offering for sale (the "Sale") substantially all of its assets (the "Assets"), including the semi-submersible drilling rig named "*La Muralla IV*" of Panamanian flag and registry (including any and all assets and equipment onboard other than the Schlumberger Cementing Unit and the ROV System, "LMIV") and any contracts the Debtor entered into postpetition that are not terminated on or before consummation of the Sale.  Unless otherwise provided in the Proposed APA for the Winning Bid, the Assets will be conveyed to the Winning Bidder at the closing of the Sale in their then-present condition, as-is, where is, and with all faults, and without any warrant whatsoever, express or implied.

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of the Debtor's Foreign tax identification number, is:  LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda (Zona Franca da Madeira) (5988).

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Bid Procedures Order or the Final DIP Order [ECF 62].

All of the Debtor's right, title, and interest in and to the Assets will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests"), with such Claims and Interests to attach to the net proceeds of the sale of such Assets, except to the extent otherwise set forth in the purchase agreement executed by the Debtor and the Winning Bidder.

      **b.**     **Marketing Process**

The Debtor's Chief Restructuring Officer, David Weinhoffer (the "CRO"), will serve as administrator of the Sale and the Auction. The CRO will conduct the marketing of the Assets, including: (i) entry into non-disclosure agreements; (ii) contacting ship brokers and agents whose clients may be interested in placing bids; (iii) directly contacting other potential buyers; (iv) coordinating inspections of LMIV; (v) reporting on the status of the Sale marketing; and (vi) with the assistance of the Debtor's counsel and in consultation with the advisors to the Backstop Lenders, evaluating the bids, designating Qualified Bids, and selecting the Winning Bid.

## II.    KEY SALE DATES AND DEADLINES[3]

| | | |
|---|---|---|
| **August 24, 2022** | | Access to Data Site made available |
| **September 14, 2022** | | LMIV Inspection period commences |
| **September 27, 2022** | | Debtor shall file a notice of Credit Bid Caps * |
| **October 19, 2022** | | LMIV Inspection period ends |
| **October 26, 2022** | **12:00 p.m. CT** | Bid Deadline |
| **October 31, 2022** | **12:00 p.m. CT** | Debtor shall file a notice of Auction (or cancellation of Auction, as applicable) |
| **November 2, 2022** | **10:00 a.m. CT** | Auction (if required) |
| **November 4, 2022** | **12:00 p.m. CT** | Debtor shall file a notice of the Winning Bid |
| **November 11, 2022** | **4:00 p.m. CT** | Deadline to object to the Sale |
| **November 15, 2022** | **12:00 p.m. CT** | Sale Hearing |
| **November 30, 2022** | | Target Sale Consummation |

\* The Backstop Lenders shall identify the applicable Credit Bid Cap by October 24, 2022 at 9:00 A.M. (prevailing Central time). The Debtor is authorized to integrate this deadline into any notices.

---

[3]   The Debtor (with the consent of the Backstop Lenders) may extend the dates and deadlines set forth in these Bid Procedures by filing a notice with the Court.

### III.     PARTICIPATION REQUIREMENTS

#### a.     Due Diligence

Only parties that execute a non-disclosure agreement acceptable to the Debtor, substantially in the form attached hereto as **Schedule 1**, (an "<u>Executed NDA</u>") will receive due diligence information from the Debtor, including access to the Debtor's electronic data room (the "<u>Data Room</u>") and reasonable access to the Assets in the form of an in-person inspection of LMIV where moored in Freeport Harbour, Freeport, Grand Bahama (the "<u>LMIV Inspection</u>"). Multiple parties may be granted simultaneous access to perform an LMIV Inspection, in the CRO's sole determination.

Upon delivery of an Executed NDA to (i) the CRO, David Weinhoffer (davidw@macco.group) and (ii) counsel to the Debtor, Jackson Walker LLP, Rebecca Blake Chaikin (rchaikin@jw.com), Genevieve M. Graham (ggraham@jw.com), Veronica A. Polnick (vpolnick@jw.com), and Javier Gonzalez (jgonzales@jw.com), the CRO will provide instructions to such party for accessing the Data Room and the LMIV to conduct an LMIV Inspection. The CRO will address all reasonable requests for additional information and due diligence access. The Debtor may refuse any party access to due diligence information, including access to the Data Room or an LMIV Inspection, in whole or in part and at any time, if the CRO determines in his reasonable business judgment after consultation with the Debtor's counsel that (x) access by such party may be harmful to the Debtor or its estate or (y) such party has not established that it intends or has the capacity to consummate a sale transaction for the Assets in good faith.

The due diligence period and the Data Room shall be open until the Bid Deadline and the LMIV Inspection shall be open until October 19, 2022. Upon and after expiration of the due diligence period, the Debtor shall have no obligation to furnish due diligence information. The CRO may, in the exercise of his reasonable business judgment and in consultation with the Debtor's counsel, extend a party's time to conduct due diligence.

The Debtor makes no representation or warranty as to the information provided through this due diligence process or otherwise, including the documents in the Data Room, except as set forth in any executed definitive documents for the Sale.

#### b.     Qualified Bid Requirements

Only bids and bidders that satisfy the following conditions will be considered or permitted to participate in the bidding, Auction, or Sale (each, a "<u>Qualified Bid</u>" and the bidder(s) submitting a Qualified Bid, a "<u>Qualified Bidder</u>"):

1.     The bid must be in writing and timely and properly submitted in accordance with the bid submission process set forth below, including successful and timely delivery of the Good Faith Deposit.

2.     The bid must fully disclose the identity of each person or entity that is participating in the bid (and the complete terms of such participation) and each such person or entity shall have delivered an Executed NDA to the CRO and counsel to the Debtor in accordance with the instructions set forth above. "Participation" in a bid includes persons or entities that are

3

equity holders in an entity specially formed for the purpose of effectuating a Sale transaction for the Assets.

3.    The bid must be for all of the Assets and identify (a) the cash consideration to be paid for the Assets (or the amount of any credit bid as allowed herein) and (b) any liabilities to be assumed as part of the proposed acquisition, including a reasonable estimate of the cash value thereof (clauses (a) and (b) together, the "Proposed Purchase Price").

4.    The bid must state that the bidder is prepared to consummate the transaction promptly following entry of an order approving the Sale and be accompanied by (a) a purchase and sale agreement executed by the bidder (the "Proposed APA"), (b) a redline of the Proposed APA against the form purchase and sale agreement attached hereto as **Schedule 2** (the "Form APA"), and (c) evidence of authorization and approval from the board (or comparable governing body) of each person or entity participating in the bid with respect to the submission, execution, delivery, and performance of the bid and Proposed APA.

5.    The bid must be (a) unqualified and not subject to any contingencies or conditions (including any further due diligence, material financing conditions, internal approval (such as but not limited to board approval)) and (b) binding and irrevocable until (i) if such bid is the Winning Bid or a Backup Bid, the earlier of (A) the closing of the Sale or (B) 45 days after the conclusion of the Auction (or, if no Auction is held, 45 days after the date on which the Debtor files a notice of cancellation of Auction) or (ii) the Debtor files a notice of Winning Bid that does not name such bid as the Winning Bid or a Backup Bid.

6.    The bid must include financial and other information sufficient for the Debtor to make a reasonable determination as to the bidder's financial and other capabilities to consummate by no later than November 30, 2022 the transactions contemplated by the Proposed APA, including (a) the availability of funds to satisfy the Proposed Purchase Price and (b) information constituting adequate assurance of future performance under contracts and leases to be assumed pursuant to section 365 of the Bankruptcy Code (if any), which information the Debtor may request be supplemented or altered such that it can be served on counterparties to any contracts or leases to be assumed and assigned in connection with the Sale that request such information.

7.    The bid must identify any and all executory contracts and unexpired leases to which the Debtor is a party that the bidder wishes to have assumed and assigned to it in connection with the acquisition (if any).  The bidder shall be solely responsible for the payment of any cure cost required pursuant to section 365 of the Bankruptcy Code.

8.    The bid must not request or entitle the bidder to any break-up fee, topping fee, expense reimbursement, or similar type of payment (and by submitting a bid, a bidder shall be deemed to have waived its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code in any way related to the submission of its bid or these Bid Procedures) or indemnification by the Debtors in favor of the bidder.

9.    The bid must include contact information for the specific person(s) the Debtor should contact in the event they have questions regarding the bid.

4

By submitting a bid, a bidder is deemed to acknowledge (and shall represent in any definitive document) that (i) it has had an opportunity to inspect and examine the Assets and to conduct any and all due diligence prior to submitting its bid, (ii) that it has relied solely upon its own independent review, investigation, and/or inspection of the Assets and any documents in submitting its bid, (iii) that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied by operation of law or otherwise, regarding the Debtor's business, the Assets, or the completeness of any information provided in connection with the Bid Procedures or the Sale process.

The Debtor and its advisors shall maintain in confidence in accordance with the applicable Executed NDA any information provided by a bidder that is designated as confidential, except as otherwise set forth in these Bid Procedures, and shall use such confidential information only in connection with the evaluation of bids or otherwise in connection with the chapter 11 case or in accordance with the Executed NDA.  Notwithstanding the foregoing and any provisions in an Executed NDA, the Debtor and Debtor's advisors may disclose confidential information (i) with the prior written consent of the applicable bidder, (ii) to the applicable bidder, (iii) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court, or other governmental order, or regulation, including, as appropriate, regulatory agencies, and (iv) to the advisors to the Backstop Lenders (but not to the Backstop Lenders themselves) solely to the extent disclosure of such confidential information is necessary to advise the Backstop Lenders in connection with their consultation rights herein.

**c.**     **Bid Submission and Evaluation Process**

Bids (including all requirements to be considered a Qualified Bid) must be submitted in writing to (i) the CRO, David Weinhoffer (davidw@macco.group) (ii) counsel to the Debtor, Jackson Walker LLP, Rebecca Blake Chaikin (rchaikin@jw.com), Genevieve M. Graham (ggraham@jw.com), Veronica A. Polnick (vpolnick@jw.com), and Javier Gonzalez (jgonzales@jw.com); and (iii) counsel to the Backstop Lenders, Milbank LLP, Mark Shinderman (mshinderman@milbank.com), Casey Fleck (cfleck@milbank.com), Brian Kinney (bkinney@milbank.com), and Mohammad Tehrani (mtehrani@milbank.com) and Pachulski Stang Ziehl & Jones, LLC, Michael D. Warner (mwarner@pszjlaw.com), so as to be received by **no later than 12:00 p.m.** (prevailing Central Time) on **October 26, 2022** (the "Bid Deadline").

Concurrent with the submission of its bid, and in no event later than the Bid Deadline, a bidder must deposit with the Debtor in cash 5% of the bidder's Proposed Purchase Price (the "Good Faith Deposit"), which shall be refundable as described below.  Bank information for the Debtor will be included in the Data Room.  Notwithstanding anything to the contrary herein, the Backstop Lenders, on behalf of the DIP Lenders and/or Noteholders, as the case may be, shall not be required to submit a Good Faith Deposit with respect to any Qualified Bid where the consideration for the Proposed Purchase Price is a credit bid.

Each bidder shall comply with all reasonable requests by the CRO for additional information and due diligence access regarding the ability of a bidder to consummate the Sale. Failure by a bidder to comply with such reasonable requests may be a basis for the Debtor to determine such bidder is not a Qualified Bidder and the associated bid is not a Qualified Bid.

The CRO shall determine, in his reasonable business judgment and in consultation with the Debtor's counsel and the advisors to the Backstop Lenders, (a) which bids meet the criteria to qualify as a Qualified Bid and (b) if there is more than one Qualified Bid, which Qualified Bid will serve as the baseline bid at the commencement of the Auction to facilitate obtaining the highest and best value for the Debtor's estate. Any bid that does not meet the criteria for a Qualified Bid set forth above shall be rejected as a non-conforming bid. If there are no timely Qualified Bids other than a credit bid by the Backstop Lenders submitted, no Auction will be held.

The Debtor shall notify bidders whether their bids have been determined to be Qualified Bids by no later than **12:00 p.m.** (prevailing Central Time) on **October 31, 2022**, at which time the Debtor shall also (a) file a notice with the Court stating whether the Auction will go forward as scheduled and (b) if the Auction will go forward, provide a summary of the material terms of each Qualified Bid (as determined by the CRO and counsel to the Debtor) to all Qualified Bidders, the Backstop Lenders, the Agents for the DIP Facility, the Trustee and Noteholder Collateral Agent, and the United States Trustee and designate which Qualified Bid will be the baseline bid.

## IV.   AUCTION

If the Debtor receives more than one timely Qualified Bid, the CRO shall conduct an auction at **10:00 a.m.** (prevailing Central Time) on **November 2, 2022** (the "Auction") via video conference and in-person at the offices of Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010. The Auction will be subject to the following rules:

1.   Only Qualified Bidders may participate in or make subsequent bids at the Auction.

2.   Only the Debtor, Qualified Bidders, the Backstop Lenders, the Agents for the DIP Facility, the Trustee and Noteholder Collateral Agent, the United States Trustee, and such parties' representatives and advisors may attend the Auction.

3.   All Qualified Bidders shall appear at the Auction; *provided* they may appear through a duly authorized representative bearing a valid and enforceable power of attorney or other written proof evidencing their ability to bind the applicable Qualified Bidder, which document(s) shall be delivered to the CRO prior to the commencement of the Auction.

4.   Each Qualified Bidder will be required to confirm on the record at the Auction that (a) it has not engaged in any collusion with respect to the bidding or Sale and (b) its Qualified Bid and any subsequent bid, is a good-faith bona fide offer and it intends to consummate the proposed sale if selected as the Winning Bidder.

5.   The Auction will begin at the baseline bid, and each Qualified Bidder may submit subsequent bids for the Proposed Purchase Price in minimum overbid increments of at least $250,000 higher than the amount of the Proposed Purchase Price in the highest and best bid at that time; *provided* that the CRO shall retain the right to modify the overbid increment at the Auction without any additional or prior notice.

6.   Each Qualified Bidder, including the Backstop Lenders, that has a valid and perfected lien on any Assets (a "Secured Creditor") shall have the right to credit bid all or any portion of the Secured Creditor's claim on a dollar-for-dollar basis pursuant to section 363(k) of the

Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured and only to the extent such credit bid is permitted under the DIP Facility, any other relevant agreements, and the Bankruptcy Code; *provided*, *further*, that any credit bid by the Backstop Lenders, on behalf of the DIP Lenders and/or Noteholders, as the case may be, shall be subject to the applicable Credit Bid Cap.[4]

7.    The Auction will be conducted openly and the Qualified Bidders will be informed of the terms of the highest and best bid promptly following receipt by the CRO at the Auction.

8.    All Qualified Bidders shall have the right to submit subsequent bids and make modifications to the Proposed APA at the Auction; *provided* that any such modifications to the Proposed APA on an aggregate basis and viewed in the whole shall not be less favorable or more burdensome to the Debtor's estate and the advisors to the Backstop Lenders, as determined by the CRO, in consultation with the Debtor's counsel, than the terms of the highest and best bid at that time.

9.    The Auction shall continue until there is only one bid that the CRO determines, in consultation with the Debtor's counsel and the advisors to the Backstop Lenders, subject to Court approval, is the highest or otherwise best from among the bids submitted at the Auction (the "Winning Bid"). In making such determination, the CRO (and Debtor's counsel and the advisors to the Backstop Lenders) shall consider, without limitation, the amount of the Proposed Purchase Price, the form of consideration being offered, the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof, the number, type, and nature of any changes to the Form APA requested by the bidders, and the net benefit to the Debtor's estate. The Qualified Bidder submitting the Winning Bid shall be the "Winning Bidder" and shall have such rights and responsibilities of the Purchaser set forth in the Proposed APA associated with the Winning Bid.

10.   The CRO, in consultation with the Debtor's counsel and the advisors to the Backstop Lenders, may also designate a bid that is the next highest or otherwise best after the Winning Bid (the "Backup Bid") and the Qualified Bidder submitting the Backup Bid shall be the "Backup Bidder."

11.   At the conclusion of the Auction, the CRO will announce the Winning Bid and, if applicable, the Backup Bid.

    a.    The Winning Bidder and Backup Bidder shall have 1 Business Day from the announcement of the Winning Bid and Backup Bid to deposit with the Debtor in

---

[4] As set forth in the Bid Procedures Order, the Backstop Lenders, on behalf of the DIP Lenders and/or Noteholders, as the case may be, have agreed to cap any credit bid they make for the Assets. By September 26, 2022, the Backstop Lenders shall notify the Debtor of the Proposed Purchase Prices above which they will not submit a credit bid if (a) they believe as of the Bid Deadline they will be able to execute a bareboat charter for LMIV and (b) if they do not expect, as of the Bid Deadline, to execute a bareboat charter for LMIV (the "Credit Bid Caps"). By September 27, 2022, the Debtor will file with the Court and post to the Data Room a notice of the Credit Bid Caps. The Backstop Lenders shall identify the applicable Credit Bid Cap by October 24, 2022 at 9:00 A.M. (prevailing Central time). In addition, the Backstop Lenders, on behalf of the DIP Lenders and/or Noteholders, as the case may be, may disclose a minimum clearing price concurrently with the Credit Bid Caps.

cash an amount sufficient to increase such bidder's Good Faith Deposit to 10% of the Proposed Purchase Price provided for in the Winning Bid or Backup Bid, as applicable.

b.      No later than **November 4, 2022**, the Debtor shall file with the Court a notice of the results of the Auction, which shall include (i) a copy of the Winning Bid and Backup Bid, (ii) the identities of the Winning Bidder and Backup Bidder, and (iii) a list of all executory contracts and unexpired leases proposed to be assumed and assigned as part of the Sale (if any) and the cure cost pursuant to § 365(b) associated with each.

12.      The CRO may, in consultation with Debtor's counsel, adopt such other rules for the Auction (including procedural rules and rules that may depart from those set forth herein) that he reasonably determines will result in the highest or otherwise best value for the Debtor's estate and that are not inconsistent with any Court order; *provided* that any changed or additional rules of the Auction are not materially inconsistent with these Bid Procedures, do not favor one Qualified Bidder over another, and are communicated to all participants substantially simultaneously at or prior to the Auction.

## V.      SALE

A hearing to approve the Sale of the Assets to the Winning Bidder in accordance with the terms of the Winning Bid and pursuant to the Proposed APA associated therewith (the "Sale Hearing") will take place on **November 15, 2022 at 12:00 p.m.** (prevailing Central time).

- If, for any reason, the Winning Bidder fails to timely consummate the purchase of the Assets, the Debtor may seek to consummate a Sale to the Backup Bidder in accordance with the terms of the Backup Bid and pursuant to the Proposed APA associated therewith without further approval by the Court (in which case the Backup Bidder shall be deemed the Winning Bidder).

- If the Winning Bidder fails to timely consummate the purchase of the Assets due to a breach or failure to perform on the part of the Winning Bidder, the defaulting Winning Bidder's Good Faith Deposit shall be forfeited to the Debtor (which funds shall be subject to the DIP Liens and DIP Budget) and the Debtor specifically reserves the right to seek all available damages from the defaulting Winning Bidder.

- The Backup Bid and the obligation of the Backup Bidder to consummate the purchase of the Assets shall remain open and in full force, including with respect to the Backup Bidder's Good Faith Deposit, until the earlier of (a) the closing of a Sale of the Assets to the Winning Bidder or Backup Bidder or (b) 45 days after the conclusion of the Auction (or, if no Auction is held, 45 days after the date on which the Debtor files a notice of cancellation of Auction).

- The Winning Bidder shall appear at the Sale Hearing personally or through a duly authorized representative who shall be prepared to testify in support of the Winning Bid and the Winning Bidder's ability to close the Sale in a timely manner and

provide adequate assurance of future performance under any and all executory contracts and unexpired leases to be assumed and assigned as part of the Sale.

Any objections to the proposed Sale, including objections to the Winning Bidder's adequate assurance of future performance and the proposed assumption and assignment of any executory contract or unexpired lease (including any proposed cure cost), must be filed with the Court no later than **November 11, 2022 at 4:00 p.m.** (prevailing Central time).

The Debtor and the Winning Bidder shall consummate the Sale within three (3) weeks or less of the entry by the Court of an order approving the Sale. At the closing of the Sale, the Winning Bidder will be entitled to a credit for the amount of its Good Faith Deposit.

## VI.    OTHER PROVISIONS

### a.    Good Faith Deposits Held in Escrow; Return of Deposits

The Good Faith Deposits shall be held in a non-interest-bearing account established and held by, and in the name of, the Debtor. The Good Faith Deposits are not property of the Debtor or its estate.

- Within five business days of determining a bid does not qualify as a Qualified Bid, the Debtor shall return by check or wire the full amount of the Good Faith Deposit submitted in connection with such non-qualified bid.

- Within five business days of the conclusion of the Auction, the Debtor shall return by check or wire the full amount of each Good Faith Deposit submitted by a party that is not selected as the Winning Bidder or Backup Bidder.

- Unless a Sale is consummated with such bidder or the Good Faith Deposit is forfeited as provided above, the full amount of the Winning Bidder's or Backup Bidder's Good Faith Deposit, as applicable, shall be returned by check or wire within five business days of earlier of (i) the closing of the Sale or (ii) 45 days after the conclusion of the Auction (or, if no Auction is held, 45 days after the date on which the Debtor files a notice of cancellation of Auction).

- All Good Faith Deposits shall be returned within five business days of the entry of an order dismissing or converting the chapter 11 case under section 1112 of the Bankruptcy Code if such dismissal or conversion occurs prior to the consummation of a Sale.

### b.    Bid Protections

No bidder, whether or not a Qualified Bidder, shall be entitled to bid protections unless consented to in writing by the Debtor and the Backstop Lenders and approved by the Court. The Debtor reserves the right to seek, in consultation with the Backstop Lenders, approval of bid protections from the Court on emergency notice to the extent the CRO determines, in his business judgment, that such bid protections are necessary or advisable under the circumstances to facilitate obtaining the highest and best value for the Debtor's estate.

9

     **c.**      **Reservation of Rights**

     The CRO reserves his rights to modify these Bid Procedures in his business judgment, in consultation with counsel to the Debtors and the advisors to the Backstop Lenders, in any manner that will best promote the goals of these Bid Procedures or impose additional customary terms and conditions on the Sale, including extending the deadlines set forth herein, adjourning the Auction and/or the Sale Hearing, adding procedural rules that are reasonably necessary or advisable under the circumstances to conduct the Auction, cancelling the Auction, and rejecting any or all bids or Qualified Bids.

     **d.**      **Fiduciary Duties**

     Notwithstanding anything to the contrary in these Bid Procedures, the Bid Procedures Order, or any other document, order, or instrument, nothing in these Bid Procedures shall require the Debtor or the CRO, after consulting with counsel, to take any action or to refrain from taking any action with respect to any sale or other transaction if taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Houston, Texas
Dated: September [●], 2022

/s/ *Rebecca Blake Chaikin*

Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Genevieve M. Graham (TX Bar No. 24085340)
Veronica A. Polnick (TX Bar No. 24079148)
Javier Gonzalez (TX Bar No. 24119697)
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: rchaikin@jw.com
Email: ggraham@jw.com
Email: vpolnick@jw.com
Email: jgonzales@jw.com

**COUNSEL FOR THE DEBTOR
AND DEBTOR IN POSSESSION**

## **SCHEDULE 1**

**Form NDA**

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (this "Agreement") is made and entered into this day of _____, 2022 (the "Effective Date") by and between LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda ("Discloser") and [Potential Bidder] ("Recipient").

WHEREAS, on June 16, 2022 (the "Petition Date"), Discloser filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

WHEREAS, On August 24, 2022, Discloser filed a motion [ECF 92] (the "Bid Procedures Motion") with the Court seeking entry of orders, among other things: (i)(a) approving procedures for the solicitation of bids in connection with the proposed sale of substantially all of the Debtor's assets, including the *La Muralla IV* semi-submersible drilling rig (the "Bid Procedures"), (b) establishing the dates and deadlines set forth in the Bid Procedures, including the Bid Deadline, Auction, and Sale Hearing, (c) authorizing and approving the form of Sale Notice, (d) approving the Assumption and Assignment Procedures for the Designated Contracts (if any), (e) approving the form of Assignment Notice, and (f) granting related relief and (ii) authorizing and approving (a) the sale of the Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests except to the extent otherwise set forth in the purchase agreement executed by the Debtor and the Winning Bidder, (b) the assumption and assignment of Designated Contracts (if any), and (c) granting related relief.[1]

WHEREAS, Recipient has requested, pursuant to the Bid Procedures, due diligence information in connection with exploring a potential acquisition of the Assets (the "Transaction"), including access to the Data Room and/or the LMIV Inspection.

WHEREAS, Discloser intends to furnish Recipient and its Representatives (defined below) with certain Confidential Information (defined below) to facilitate Recipient's due diligence for a Transaction.

WHEREAS, as a condition to the delivery of the Confidential Information, Discloser requires that Recipient and its Representatives, maintain the confidentiality of the Confidential Information and use the same only for the purposes contemplated by this Agreement.

NOW, THEREFORE, the parties agree as follows:

1.      As used herein, "Confidential Information" means all information disclosed to Recipient or its directors, officers, employees, partners, affiliates, subsidiaries, agents, attorneys, engineers, accountants, or other consultants having a need for access thereto for purposes of preparing a bid (collectively, "Representatives"), whether in tangible or intangible form, including, but not limited to operations data, financial data, asset appraisals, business records, intellectual

---

[1]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Bid Procedures or the Bid Procedures Motion.

property, trade secrets, and competitive intelligence data made available by Discloser to Recipient and all analyses, compilations, studies or documents prepared or generated by or for Discloser, Recipient, or their Representatives that are based upon, in whole or in part, or which otherwise contain or reflect any Confidential Information.  Notwithstanding the foregoing, Confidential Information shall not include information (i) in the public domain (other than as a result of a breach of this Agreement); (ii) in Recipient's possession prior to its receipt from Discloser pursuant to this Agreement; or (iii) independently developed by Recipient or known through a party other than Discloser, which Recipient has no duty of confidentiality to Discloser.

2.      Recipient agrees to maintain the confidentiality of the Confidential Information and shall not, directly or indirectly, during the term of this Agreement as provided in <u>Paragraph 4</u> hereof (a) transfer or disclose orally, in writing or electronically any Confidential Information to any third party; (b) use any Confidential Information for any purpose other than for the purpose of evaluating whether to submit a bid for a Transaction; or (c) except for its internal use or use by its Representatives in connection with making and submitting a bid.  Recipient further agrees that Discloser retains all right, title, and interest in the Confidential Information and that, at Discloser's option, Recipient shall either return to Discloser or destroy all Confidential Information, and all copies thereof, within 10 days of the written request therefor by Discloser; *provided*, *however*, that Recipient may retain any copies, extracts or other reproductions of such Confidential Information in whole or in part (x) to the extent necessary in order to comply with legal or regulatory recordkeeping requirements of general application, or (y) in accordance with customary recordkeeping policies of Recipient (including any internal policy or system relating to the archiving or backup storage of electronic data).

3.      Notwithstanding anything to the contrary contained herein, Recipient shall be permitted to disclose the Confidential Information to its Representatives who have been instructed to, and have agreed to, be bound (directly or as a matter of professional codes of conduct) by the terms and conditions of this Agreement prior to being given access to the Confidential Information. Recipient shall take steps, no less rigorous than those it takes to protect its own confidential information, to prevent its Representatives from acting in a manner inconsistent with the terms of this Agreement.  Recipient shall be liable to Discloser for any breach of this Agreement by Recipient or its Representatives.

4.      The obligations set forth in this Agreement shall survive for a period of 12 months from the Effective Date.

5.      Recipient acknowledges and agrees that Discloser and its Representatives: (a) do not make any representation or warranty of any kind or nature, express or implied, as to the accuracy or completeness of the Confidential Information, and undertake no obligation to furnish Recipient or its Representatives with access to any additional Confidential  Information; and (b) will not have any liability to Recipient, its Representatives or any other Person relating to the accuracy and completeness of the Confidential Information, or the use of the Confidential Information by Recipient or its Representatives, it being specifically understood and agreed that Recipient is not entitled to rely on the accuracy and completeness of the Confidential Information. This Agreement in no way constitutes any undertaking to exchange or make available any particular Confidential Information or other information, and the extent of such exchange or availability shall be as agreed upon by the parties from time to time.

LAFORTA - GESTÃO E INVESTIMENTOS,
SOCIEDADE UNIPESSOAL LDA.

6.      Recipient agrees that where Discloser is delivering Confidential Information under this Agreement, and Discloser reasonably considers that it is not appropriate for particular Confidential Information to be made generally available to Recipient and its Representatives pursuant to the terms of this Agreement because the information contained therein is subject to separate obligations of confidentiality or is otherwise sensitive, Discloser may limit the exchange and the disclosure of such Confidential Information to only those recipients she has specifically authorized.  In such circumstances, the terms and conditions of the disclosure of such Confidential Information, including the specific individuals to whom the disclosure may be made and additional restrictions on use of the particular Confidential Information so covered will be the subject of a supplemental confidentiality agreement, acknowledgment or amendment as mutually agreed upon between Discloser and Recipient.

7.      Neither Recipient nor Discloser will be under any legal obligation of any kind whatsoever with respect to any Transaction by virtue of this Agreement or any other written or oral expression with respect to a Transaction, except for the matters specifically agreed to herein. This Agreement shall not be construed or implied to, and nothing herein shall, obligate Discloser to furnish any specific information or type of information to Recipient or its Representatives.  Recipient acknowledges and agrees that Discloser reserves the right, in its sole discretion, to negotiate and enter into an agreement with any other person with respect to a Transaction at any time, and without prior notice to Recipient or to any other person, (b) reject any and all proposals made by Recipient or any of its Representatives regarding a Transaction and (c) terminate discussions and negotiations with Recipient and its Representatives at any time and for any reason.

8.      If Recipient or its Representatives receive a request by written interrogatories, request for information or documents, subpoena, examination or audit or other similar process by a legal or regulatory authority and, in the case of Recipient's Representatives that are accounting firms, pursuant to applicable professional standards or obligations thereunder, to disclose Confidential Information, Recipient or any such Representative shall promptly, to the extent legally permissible, notify Discloser of such request, requirement or proceeding in order to afford Discloser an opportunity to seek a protective order or other assurance that the Confidential Information will not be disclosed or disseminated by the recipient(s) thereof.  Upon Discloser's request and at Discloser's cost, Recipient shall cooperate with Discloser to seek and obtain such a protective order or other assurance.  If Discloser is unable to obtain or does not seek such a protective order or other assurance, then Recipient may disclose such portions of the Confidential Information that Recipient or its Representatives are advised by their counsel they are legally compelled to disclose under pain or liability for contempt, censure or penalty.

9.      Recipient acknowledges that remedies at law may be inadequate to protect Discloser against any actual or threatened breach of this Agreement by Recipient or by its Representatives and, without prejudice to any other rights and remedies otherwise available to Discloser, Discloser shall be entitled to seek injunctive relief and specific performance in Discloser's favor without proof of actual damages, and Recipient further waives any requirement for the securing or posting of any bond in connection with any such remedy.  Such remedy shall not be deemed to be the exclusive remedy for Recipient's breach of, or failure to comply with, this Agreement, but shall be in addition to all other remedies available at law or in equity.  In the event of any breach of, or failure to comply with, this Agreement by Recipient or its Representatives,

3

LAFORTA - GESTÃO E INVESTIMENTOS,
SOCIEDADE UNIPESSOAL LDA.

Recipient agrees to reimburse Discloser promptly upon demand for all out of pocket costs and expenses reasonably incurred by them and their Representatives in the enforcement of their rights hereunder (including, without limitation, reasonable fees and disbursements of counsel).  In the event that Recipient or its Representatives shall have knowledge of any breach of this Agreement, Recipient shall promptly give notice thereof to Discloser.  In the event Discloser institutes any legal suit, action, or proceeding against Recipient arising out of or relating to this Agreement, if Discloser prevails in the suit, action or proceeding as determined by a final, non-appealable judgment of a court of competent jurisdiction in connection with such proceedings, Discloser shall be entitled to receive in addition to all other damages to which it may be entitled, the reasonable costs incurred by Discloser and its Representatives in prosecuting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

10.     This Agreement shall be governed by and construed in accordance with the laws of the State of Texas (without giving effect to principles of conflicts of laws).  Any disputes arising out of this Agreement shall be adjudicated exclusively by the Court.

11.     The provisions of this Agreement are severable and the unenforceability of any provision of this Agreement shall not affect the enforceability of any other provision hereof.  In addition, in the event that any provision of this Agreement (or any portion thereof) is determined by a court of competent jurisdiction to be unenforceable as drafted by virtue of the scope, duration, extent or character of any obligation contained herein, the parties acknowledge that it is their intention that such provision (or portion thereof) shall be construed in a manner designed to effectuate the purposes of such provision to the maximum extent enforceable under applicable law.

12.     This Agreement contains the entire agreement between the parties hereto concerning the matters set out herein, and supersedes all prior understandings relating to the subject matter hereof. This Agreement may not be amended except by an instrument in writing signed by or on behalf of the parties hereto.

13.     This Agreement may be executed in counterparts, each of which will be deemed an original document, but all of which will constitute a single agreement.  Facsimile or PDF signatures will be deemed valid and binding to the same extent as original signatures.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

[RECIPIENT]                                          LAFORTA - GESTÃO E INVESTIMENTOS

By: _____              By: _____
Name:     [●]                                        Name:    David T. Weinhoffer
Title      [●]                                        Title     Chief Restructuring Officer

[*Please return the completed and executed Agreement to davidw@macco.group*
*and Debtor's counsel in accordance with Part III.a of the Bid Procedures*]

33785161

## SCHEDULE 2

**Form APA**

## MEMORANDUM OF AGREEMENT

Dated: _____

LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda (Zona Franca da Madeira), hereinafter called the "Seller", has agreed to sell, and _____(*Name of buyer*), hereinafter called the "Buyer", has agreed to buy:

> **Name of vessel:** *La Muralla IV*
> **IMO Number:** 8770091
> **Classification Society:** ABS
> **Class Notations:** ABS A1, Column Stabilized Drilling Unit, AMS,ACCU,DPS-3, CRC, HELIDK, Slev (l)
> **Year of Build:** 2012
> **Builder/Yard:** Daewoo Shipbuilding & Marine Engineering Co. Ltd.
> **Flag:** Panama
> **Place of Registration:** Panama
> **DISP (tonnes):** 56168
> **Deadweight (tonnes):** 25931.8

hereinafter called the "Vessel", on the following terms and conditions.

**THIS AGREEMENT IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION (THE "BANKRUPTCY COURT").**

**THIS AGREEMENT IS FURTHER SUBJECT TO HIGHER AND BETTER OFFERS SUBMITTED TO THE BANKRUPTCY COURT WHICH MAY RESULT IN THIS AGREEMENT BECOMING A BACKUP AGREEMENT.**

**Definitions[1]**

"Banking Days" are days on which banks are open both in the country of the currency stipulated for the Purchase Price in Clause 1 (Purchase Price) and in the place of closing stipulated in Clause 8 (Documentation) and _____(*add additional jurisdictions as appropriate).*

"Bid Procedures" means the procedures governing the sale of the Vessel, approved by the Bankruptcy Court on September _, 2022 [ECF [•]].

"Buyer's Nominated Flag State" means _____(*state flag state).*

"Class" means the class notation referred to above.

"Classification Society" means the Society referred to above.

---

[1]   Capitalized terms used but not defined herein have the meanings given to them in the Bid Procedures.

"<u>Deposit</u>" shall have the meaning given in Clause 2 (Deposit)

"<u>Deposit Holder</u>" means the Seller's Bank, as set forth in the Deposit instructions provided by the Seller, which shall hold and release the Deposit in accordance with this Agreement.

"<u>In writing</u>" or "<u>written</u>" means a letter handed over from the Seller to the Buyer or vice versa, a registered letter, e-mail or telefax.

"<u>Parties</u>" means the Seller and the Buyer.

"<u>Purchase Price</u>" means the price for the Vessel as stated in Clause 1 (Purchase Price).

"<u>Seller's Account</u>" means_____(*state details of bank account*) at the Seller's Bank.

"<u>Seller's Bank</u>" means_____(*state name of bank, branch and details*) or, if left blank, the bank notified by the Seller to the Buyer for receipt of the balance of the Purchase Price.

## 1.   **Purchase Price**

The Purchase Price is US$_____.

## 2.   **Deposit**

As security for the correct fulfilment of this Agreement, the Buyer shall lodge with the Deposit Holder a deposit of 5% (five percent) of the Purchase Price (the "<u>Deposit</u>") and, if selected as a Winning Bidder or Backup Bidder, the Buyer shall increase such Deposit to 10% of the Purchase Price, in each case, in accordance with the terms regarding the "Good Faith Deposit" in the Bid Procedures.

## 3.   **Payment**

On delivery of the Vessel:

**(a)**   the Deposit shall be released to the Seller; and

**(b)**   the balance of the Purchase Price and all other sums payable on delivery by the Buyer to the Seller under this Agreement shall be paid by the Buyer to the Seller in full, free of bank charges, to the Seller's Account.

## 4.   **Inspection**

The Buyer inspected and accepted the Vessel's classification records. The Buyer also inspected the Vessel in Freeport, Grand Bahama on_____(*state date*) and accepted the Vessel following this inspection.  The sale is outright, binding and definite, subject only to the terms and conditions of this Agreement.

**5.**     <u>**Time and place of delivery and notices**</u>

**(a)**     The Vessel shall be delivered to the Buyer and taken over safely afloat at Freeport, Bahamas where it is currently docked.

Expected Time of Delivery: Within 14 days after approval of this Agreement is obtained from the Bankruptcy Court. The Vessel must be free and clear of all liens and encumbrances, and the decision must not be subject to further appeal.

**(b)**     Should the Vessel become an actual, constructive or compromised total loss before delivery, the Deposit shall be released within two (2) Banking Days to the Buyer, whereafter this Agreement shall be terminated and null and void.

**6.**     <u>**Diver's inspection**</u>

The Vessel is to be delivered without dry-docking. However, the Buyer shall have the option at its cost and expense to arrange for an underwater inspection by a diver approved by the Classification Society prior to the delivery of the Vessel, in accordance with the Bid Procedures. This inspection shall be carried out in the presence of a Classification Society surveyor arranged and paid for by the Buyer. The Buyer's representative(s) shall have the right to be present at the diver's inspection as an observer(s) only without interfering with the work or decisions of the Classification Society surveyor. The extent of the inspection and the conditions under which such inspection is performed shall be to the satisfaction of the Classification Society.

**7.**     <u>**Spares, bunkers and other items**</u>

The Seller shall deliver the Vessel to the Buyer with everything belonging to her on board and stored on shore. All spare parts and spare equipment belonging to the Vessel at the time of inspection used or unused, whether on board or not shall become the Buyer's property, but spare parts and equipment on order are excluded. Forwarding charges, if any, shall be for the Buyer's account. The Seller is not required to replace spare parts that are taken out of storage and used as replacement prior to delivery, but the replaced items shall be the property of the Buyer. Unused stores and provisions shall be included in the sale and be taken over by the Buyer without additional payment or consideration.

Library and forms exclusively for use in the Seller's vessel(s) and captain's, officers' and crew's personal belongings including the slop chest are excluded from the sale without compensation, as well as the following additional items:_____*(include list)*

Items on board which are on hire or owned by third parties, listed as follows, are excluded from the sale without compensation:_____*(include list)*

The Buyer shall take over remaining bunkers and unused lubricating and hydraulic oils and greases in storage tanks and unopened drums and pay either:

*(choose either 7(a) or 7(b)):*

**(a)**      *the actual net price (excluding barging expenses), as evidenced by invoices or vouchers; or

**(b)**      *the current net market price (excluding barging expenses) at the port and date of delivery of the Vessel or, if unavailable, at the nearest bunkering port, for the quantities taken over.

Payment under this Clause 7 shall be made at the same time and place and in the same currency as the Purchase Price.

"Inspection" in this Clause 7, shall mean the Buyer's inspection according to Clause 4 (Inspection) and Clause 6 (Diver's Inspection), if applicable. If the Vessel is taken over without inspection, the date of this Agreement shall be the relevant date.

## 8.    **Documentation**

The place of closing: Jackson Walker – Houston, 1401 McKinney St., Suite 1900, Houston, Texas 77010

**(a)**      In exchange for payment of the Purchase Price the Seller shall provide the Buyer with the following delivery documents:

     **(i)**      Legal Bill(s) of Sale in a form recordable in the Buyer's Nominated Flag State, transferring title of the Vessel and stating that the Vessel is free from all mortgages, encumbrances and maritime liens or any other debts whatsoever, duly notarially attested and legalized or apostilled, as required by the Buyer's Nominated Flag State;

     **(ii)**      Certificate or Transcript of Registry issued by the competent authorities of the flag state on the date of delivery evidencing the Seller's ownership of the Vessel and that the Vessel is free from registered encumbrances and mortgages, to be faxed or e-mailed by such authority to the closing meeting with the original to be sent to the Buyer as soon as possible after delivery of the Vessel;

     **(iii)**      Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence of deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that the registry does not as a matter of practice issue such documentation immediately, a written undertaking by the Seller to effect deletion from the Vessel's registry forthwith and provide a certificate or other official evidence of deletion to the Buyer promptly and latest within four (4) weeks after the Purchase Price has been paid and the Vessel has been delivered;

     **(iv)**      Commercial Invoice for the Vessel;

     **(v)**      Commercial Invoice(s) for bunkers, lubricating and hydraulic oils and greases;

     **(vi)**      Any additional documents as may reasonably be required by the competent authorities of the Buyer's Nominated Flag State for the purpose of registering the

Vessel, provided the Buyer notify the Seller of any such documents as soon as possible after the date of this Agreement; and

**(vii)**   The Seller's letter of confirmation that, to the best of its knowledge, the Vessel is not black-listed by any nation or international organization.

**(b)**   At the time of delivery the Buyer shall provide the Seller with:

**(i)**   Evidence that all necessary corporate, shareholder and other action has been taken by the Buyer to authorize the execution, delivery and performance of this Agreement; and

**(ii)**   Power of Attorney of the Buyer appointing one or more representatives to act on behalf of the Buyer in the performance of this Agreement, duly notarially attested and legalized or apostilled (as appropriate).

**(c)**   If any of the documents listed in Sub-clauses (a) and (b) above are not in the English language, then such documents shall be accompanied by an English translation by an authorized translator or certified by a lawyer qualified to practice in the country of the translated language.

**(d)**   To the extent not already provided in accordance with the Bid Procedures, the Parties shall, to the extent possible, exchange copies, drafts, or samples of the documents listed in Sub-clause (a) and Sub-clause (b) above for review and comment by the other Party not later than the seven (7) days after approval of this Agreement by the Bankruptcy Court, or as soon as reasonably practicable thereafter.

**(e)**   Concurrent with the exchange of documents in Sub-clause (a) and Sub-clause (b) above, the Seller shall also deliver to the Buyer the classification certificate(s) as well as all plans, drawings and manuals, (excluding ISM/ISPS manuals) that are on board the Vessel.  Other certificates that are on board the Vessel shall also be handed over to the Buyer unless the Seller is required to retain same, in which case the Buyer has the right to make copies of same, at the expense of the Buyer.

**(f)**   Other technical documentation that may be in the Seller's possession shall promptly after delivery be forwarded to the Buyer at the Buyer's expense, if the Buyer so requests. The Seller may keep the Vessel's log books, but the Buyer has the right to make copies of same, at the expense of the Buyer.

**(g)**   The Parties shall sign and deliver to each other a Protocol of Delivery and Acceptance confirming the date and time of delivery of the Vessel from the Seller to the Buyer.

**9.**   **Encumbrances**

Pursuant to 11 U.S.C. § 363(f), the Seller's sale of the Vessel to the Buyer will be, as of the closing of the sale, a legal, valid, and effective transfer of the Vessel, which transfer vests or will vest the Buyer with all right, title, and interest of the Seller to the Vessel free and clear of, among other

things, all liens, all debts arising under, relating to, or in connection with any act of the Seller, claims, liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the Seller's bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise relating to, accruing or arising any time prior to or on the closing.

## 10. **Sale Order**

**(a)** Seller and Buyer acknowledge and agree that this Agreement and the transactions contemplated hereby are contingent upon the approval and authorization of the Bankruptcy Court.

**(b)** Seller shall use its best efforts to promptly obtain the entry of an order of the Bankruptcy Court approving this Agreement and the transactions contemplated hereby (the "Sale Order") in accordance with the Bid Procedures.

**(c)** The Sale Order contemplated hereby shall contain the following provisions (it being understood that certain of such provisions may be contained in either the findings of fact or conclusions of law to be made by the Bankruptcy Court as part of the Sale Order):

   **(i)**   the sale of the Vessel by Seller to Buyer: (A) is or will be a legal, valid, and effective transfer of the Vessel; (B) vests or will vest Buyer with all right, title, and interest of such Seller to the Vessel free and clear of all encumbrances and claims pursuant to § 363(f) of the Bankruptcy Code, except as otherwise specifically provided herein; and (C) constitute a transfer for reasonably equivalent value and fair consideration;

   **(ii)**   all persons are enjoined from taking any actions against Buyer or any affiliate or assignee of Buyer to recover any claim that such person has solely against Seller;

   **(iii)**   the provisions of the Sale Order are non-severable and mutually dependent;

   **(iv)**   Buyer has acted in good faith within the meaning of § 363(m) of the Bankruptcy Code, the transactions contemplated by this Agreement are undertaken by Buyer and Seller at arm's length, without collusion and in good faith within the meaning of § 363(m) of the Bankruptcy Code, and such parties are entitled to the protections of § 363(m) of the Bankruptcy Code;

   **(v)**   the Bankruptcy Court retains exclusive jurisdiction to interpret and enforce the provisions of this Agreement and the Sale Order in all respects; and

   **(vi)**   such other provisions as Buyer and Seller may agree to.

**(d)**   Any provisions in the Sale Order affecting the economic terms of the transactions contemplated by this Agreement or the closing conditions hereof must be approved by Buyer, in its sole and absolute discretion, and Seller, in its sole and absolute discretion.

**(e)**     In the event the Sale Order is appealed, Seller and Buyer shall each use their respective best efforts to defend such appeal or, by mutual written agreement, close the transactions contemplated hereby unless such closing is stayed by Bankruptcy Court order. Seller shall keep Buyer reasonably informed of the status of its efforts to obtain the entry of the Sale Order. Seller shall give Buyer reasonable advance written notice of any hearings regarding the motions required to obtain the issuance of the Sale Order, and Buyer shall have the right to attend and be heard at any such hearings.

## 11.   <u>Cooperation in bankruptcy matters</u>

Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, such as furnishing affidavits, non-confidential financial information, confidential information subject to a reasonable form of confidentiality agreement, or other documents or information for filing with the Bankruptcy Court and making its representatives available to be interviewed by Seller's attorneys and to testify before the Bankruptcy Court and at depositions.

If a written objection is filed to the motion seeking approval of this Agreement, which is an objection that would prohibit or otherwise prevent the Closing from occurring pursuant to the terms of this Agreement, Seller and Buyer shall each use their best efforts to have such objection overruled.

## 12.   <u>Taxes, fees and expenses</u>

Any taxes, fees and expenses in connection with the purchase and registration in the Buyer's Nominated Flag State shall be for the Buyer's account; whereas, similar charges in connection with the closing of the Seller's register shall be for the Seller's account.

## 13.   <u>Condition on delivery</u>

The Vessel, and everything belonging to her, shall be at the Seller's risk and expense until the Vessel is delivered to the Buyer, but subject to the terms and conditions of this Agreement the Vessel shall be delivered and taken over as the Vessel was at the time of inspection, fair wear and tear excepted.

The Vessel shall be delivered free of cargo and free of stowaways, as-is and where-is, with current ABS Class recommendations, and with her current classification certificates and national certificates, as well as all other certificates the Vessel had at the time of inspection.

"<u>Inspection</u>" in this Clause 11, shall mean the Buyer's inspection according to Clause 4.

If the Vessel is taken over without inspection, the date of this Agreement shall be the relevant date.

## 14.   <u>Name</u>

Upon delivery, the Buyer may undertake to change the name of the Vessel.

**15.**   <u>**Buyer's default**</u>

Should the Deposit not be lodged in accordance with Clause 2 (Deposit), the Seller has the right to cancel this Agreement, and the Seller shall be entitled to claim compensation for its losses and for all other expenses incurred together with interest in accordance with the Bid Procedures.

Should the Purchase Price not be paid in accordance with Clause 3 (Payment), the Seller has the right to cancel this Agreement, in which case the Deposit shall be released to the Seller in accordance with the Bid Procedures. If the Deposit does not cover the Seller's loss, the Seller shall be entitled to claim further compensation for its losses and for all expenses incurred together with interest.

**16.**   <u>**Seller's default**</u>

Should the Seller fail to be ready to validly complete a legal transfer by the outside date set forth in the Bid Procedures, the Buyer shall have the option of cancelling this Agreement. In the event that the Buyer elects to cancel this Agreement, the Deposit shall be released to them in accordance with the Bid Procedures.

**17.**   <u>**Buyer's representatives**</u>

After this Agreement has been signed by the Parties and approved by the Bankruptcy Court, and the Deposit has been lodged, the Buyer has the right to place two (2) representatives on board the Vessel at the sole risk and expense of the Buyer. These representatives shall be on board for the purpose of familiarization and in the capacity of observers only, and the observers shall not interfere in any respect with the operation of the Vessel. The Buyer and the Buyer's representatives shall sign the Seller's P&I Club's standard letter of indemnity prior to their embarkation.

**18.**   <u>**Law and Jurisdiction**</u>

This Agreement shall be governed by and construed in accordance with Title 11 of the United States Code and the substantive law (not including the choice of law rules) of the State of Texas. Any dispute arising out of or in connection with this Agreement shall be adjudicated by the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**19.**   <u>**Notices**</u>

All notices to be provided under this Agreement shall be in writing. Contact details for recipients of notices are as follows:

For the Buyer:

   [_____]

For the Seller:

LaForta - Gestão e Investimentos,
Sociedade Unipessoal, Lda (Zona Franca da Madeira)
c/o David Weinhoffer, Chief Restructuring Officer
davidw@macco.group

with a copy to Seller's Counsel

Jackson Walker LLP
Rebecca Blake Chaikin
Genevieve M. Graham
Veronica A. Polnick
rchaikin@jw.com
ggraham@jw.com
vpolnick@jw.com

## 20.   **Entire Agreement**

The written terms of this Agreement comprise the entire agreement between the Buyer and the Seller in relation to the sale and purchase of the Vessel and supersede all previous agreements whether oral or written between the Parties in relation thereto.

Each of the Parties acknowledges that in entering into this Agreement it has not relied on and shall have no right or remedy in respect of any statement, representation, assurance or warranty (whether or not made negligently), except as expressly set forth in this Agreement.

Any terms implied into this Agreement by any applicable statute or law are hereby excluded to the extent that such exclusion can legally be made. Nothing in this Clause shall limit or exclude any liability for fraud.

## 21.   **Signature**

This Agreement may be executed in any number of counterparts, any of which may be delivered via PDF, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute one instrument.

## 22.   **Expenses**

Except as otherwise expressly provided in this Agreement, each party shall pay its own expenses in connection with the authorization, preparation, execution, and delivery of this Agreement and the Ancillary Agreements, including, without limitation, all fees and expenses of agents, representatives, counsel and accountants.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

[BUYER]                                          LAFORTA - GESTÃO E INVESTIMENTOS

By: _____              By: _____

Name:    [●]                                      Name:    David T. Weinhoffer

Title      [●]                                       Title      Chief Restructuring Officer

*[Signature Page to La Muralla IV Asset Purchase Agreement]*

**<u>Exhibit B</u>**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LAFORTA - GESTÃO E INVESTIMENTOS, | § | Case No. 22-90126 (DRJ) |
| SOCIEDADE UNIPESSOAL LDA.,[1] | § | |
| | § | |
| Debtor. | § | **Re: Docket No._____** |
| | § | |

**NOTICE OF SALE, BID PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE**:

On June 16, 2022 (the "Petition Date"), the above-captioned debtor and debtor in possession (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

On August 24, 2022, the Debtor filed a motion [ECF 92] (the "Bid Procedures Motion") with the Court seeking entry of orders, among other things: (i)(a) approving procedures for the solicitation of bids in connection with the proposed sale of substantially all of the Debtor's assets, including the *La Muralla IV* semi-submersible drilling rig (the "Bid Procedures"), (b) establishing the dates and deadlines set forth in the Bid Procedures, including the Bid Deadline, Auction, and Sale Hearing, (c) authorizing and approving the form of Sale Notice, (d) approving the Assumption and Assignment Procedures for the Designated Contracts (if any), (e) approving the form of Assignment Notice, and (f) granting related relief and (ii) authorizing and approving (a) the sale of the Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests except to the extent otherwise set forth in the purchase agreement executed by the Debtor and the Winning Bidder, (b) the assumption and assignment of Designated Contracts (if any), and (c) granting related relief.[2]

On September [●], 2022, the Court entered an order [ECF [●]] (the "Bid Procedures Order") approving, among other things, the Bid Procedures, which establish key dates and deadlines related to the Auction for, and the Sale of, the Assets. **All interested bidders and parties in interest in the chapter 11 case should carefully read the Bid Procedures Order and the Bid Procedures in their entirety.**

---

[1]   The Debtor in this chapter 11 case, along with the last four digits of the Debtor's Foreign tax identification number, is: LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda (Zona Franca da Madeira) (5988).

[2]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Bid Procedures or the Bid Procedures Motion.

1

Copies of the Bid Procedures, Bid Procedures Motion, and the Bid Procedures Order, and all other documents filed with the Court, are available free of charge on the Debtor's case information website, located at https://cases.stretto.com/LaForta/.

## **Participation in the Sale Process**

The Bid Procedures set forth the requirements for submitting a Qualified Bid and any person interested in making an offer to purchase the Assets must strictly comply with the Bid Procedures. Only Qualified Bids will be considered by the Debtor in accordance with the Bid Procedures.

Any interested bidder should contact the CRO, David Weinhoffer (davidw@macco.group) as soon as practicable.

## **Important Dates and Deadlines**[3]

The Bid Procedures include a number of dates and deadlines that must be strictly complied with, only a few of which are highlighted here:

- **Due Diligence Period.** Interested bidders may gain access to the Data Room **immediately**.

- **LMIV Inspection Period.** Interested bidders may conduct in-person inspections of LMIV in Freeport Harbour, Grand Bahama **between September 14, 2022 and October 19, 2022**.

- **Bid Deadline.** The deadline to submit a qualified Bid is **October 26, 2022**, at **12:00 p.m.** (prevailing Central Time).

- **Auction.** The Auction (if any) will commence on **November 2, 2022**, at **10:00 a.m.** (prevailing Central Time), via video conference and in-person at the offices of Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010.

- **Notice of Winning Bid.** By **November 4, 2022**, at **12:00 p.m.** (prevailing Central Time), the Debtor shall file with the Court a notice of the results of the Auction.

- **Deadline to Object to the Sale.** Objections to the Sale (or the assumption and assignment of any Designated Contract) must be filed with the Court by **November 11, 2022**, at **4:00 p.m.** (prevailing Central Time) and otherwise meet the requirements set forth in the Bid Procedures Order.

- **Sale Hearing.** A hearing to consider approval of the proposed Sale will be held before the Court on **November 15, 2022**, at **12:00 p.m.** (prevailing Central Time) at 515 Rusk Street Courtroom 400, Houston, Texas 77002. Participation in the hearing may be in person or by an audio and video connection, as set forth in the Bid Procedures Motion.

---

[3] The following dates and deadlines may be extended by the Debtor (with the consent of the Backstop Lenders) by filing a notice with the Court, pursuant to the Bid Procedures.

## Consequences of Failing to Timely Assert an Objection

Except as otherwise ordered by the Court, any party or entity that fails to timely make an objection to the Sale on or before the objection deadline in accordance with the Bid Procedures Order and this notice shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances, and other interests.

## No Successor Liability

By the Bid Procedures Motion, the Debtor is seeking to transfer the Assets to the Winning Bidder free and clear of, among other things, any claim arising from any conduct of the Debtor prior to the closing of the Sale, whether known or unknown, due or become due, accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale. Accordingly, the Debtor is requesting the Court order that, as a result of the Sale, the Winning Bidder will not be a successor to the Debtor by reason of any theory of law or equity and the Winning Bidder will have no liability, except as expressly provided in the definitive documentation for the Sale, for any liens, claims, encumbrances, and other interests against or in the Debtor or LMIV under any theory of law including successor liability theories.

Houston, Texas
Dated: September [•], 2022

/s/
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Genevieve M. Graham (TX Bar No. 24085340)
Veronica A. Polnick (TX Bar No. 24079148)
Javier Gonzalez (TX Bar No. 24119697)
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: rchaikin@jw.com
Email: ggraham@jw.com
Email: vpolnick@jw.com
Email: jgonzales@jw.com

**COUNSEL FOR THE DEBTOR
AND DEBTOR IN POSSESSION**

3

**<u>Exhibit C</u>**

**Assumption and Assignment Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LAFORTA - GESTÃO E INVESTIMENTOS, | § | Case No. 22-90126 (DRJ) |
| SOCIEDADE UNIPESSOAL LDA.,[1] | § | |
| | § | |
| Debtor. | § | |
| | § | |

---

**ASSUMPTION AND ASSIGNMENT PROCEDURES**

On July 16, 2022 (the "<u>Petition Date</u>"), the above-captioned debtor and debtor in possession (the "<u>Debtor</u>") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>").

On September [●], 2022, the Court entered the *Order (I) Approving the Bid Procedures (II) Scheduling the Bid Deadlines, Auction, and Sale Hearing and Approving Notice Thereof, (III) Approving Assumption and Assignment Procedures and Notice Thereof, and (IV) Granting Related Relief* [ECF No. [●]] (the "<u>Bid Procedures Order</u>"), which approved (a) procedures pursuant to which the Debtor is authorized to sell all or substantially all of the Debtor's assets (the "<u>Bid Procedures</u>") and (b) the procedures in connection with the assumption and assignment of Designated Contracts (if any) set forth below (the "<u>Assumption and Assignment Procedures</u>").[2]

1.     The Debtor does not believe it is a party to any executory contracts or unexpired leases.  If the Debtor discovers prior to the Bid Deadline that it is, in fact, party to an executory contract or unexpired lease, it will promptly inform the counterparty to such contract or lease that it may be subject to assumption and assignment to the Winning Bidder in a Sale and provide a copy of the Bid Procedures Order (including these Assumption and Assignment Procedures).  The Debtor will use commercially reasonable efforts to promptly determine the requisite cure cost (if any) for such contract or lease and inform the counterparty thereof.

2.     If a Qualified Bid identifies an executory contract or unexpired lease it wishes to have assumed and assigned to it in connection with the Sale, the Debtor will use commercially reasonable efforts to promptly notify the counterparty to such contract or lease of the designation of such contract or lease in a Qualified Bid.

---

[1]    The Debtor in this chapter 11 case, along with the last four digits of the Debtor's Foreign tax identification number, is:  LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda (Zona Franca da Madeira) (5988).

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Bid Procedures Order.

3.      If the Winning Bid or Backup Bid identifies any executory contract(s) or unexpired lease(s) it wishes to have assumed and assigned to it in connection with the Sale, the notice the Debtor files with the Court identifying the Winning Bid and Backup Bid (the "<u>Notice of Winning Bid</u>") shall include a list of such contract(s) or lease(s) (the "<u>Designated Contracts</u>").

4.      No later than **November 4, 2022**, the Debtor shall serve a customized Assignment Notice, including the final proposed cure cost (if any) and the Notice of Winning Bid, upon the counterparties to the Designated Contracts by overnight mail to the address set forth in the notice provision of the applicable Designated Contract and electronic mail where available.

5.      The inclusion of a contract in the Notice of Winning Bid or an Assignment Notice shall not (a) obligate the Debtor to assume or assign such contract or (b) constitute any admission or agreement by the Debtor that such contract is an executory contract.  Only those contracts that are included on a schedule of assumed and acquired contracts attached to definitive documentation in the Sale that is approved by the Sale Order will be assumed and assigned.

6.      Counterparties to the Designated Contracts may request adequate assurance of future performance by the Winning Bidder or Backup Bidder by contacting (a) the CRO, David Weinhoffer (davidw@macco.group) and (b) counsel to the Debtor, Jackson Walker LLP, Rebecca Blake Chaikin (rchaikin@jw.com), Genevieve M. Graham (ggraham@jw.com), Veronica A. Polnick (vpolnick@jw.com), and Javier Gonzalez (jgonzales@jw.com).  Such adequate assurance may be provided on a confidential basis for all nonpublic information.

7.      If a counterparty to a Designated Contract objects to the assumption and assignment of the Designated Contract, the proposed cure cost, and/or the adequate assurance of future performance, they ***must*** file with the Court with proof of service thereof so as to be actually received on or before **November 11, 2022** at **4:00 p.m.** (prevailing Central Time) an objection that: (a) is in writing; (b) complies with the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) states the name and address of the objecting party and identifies the Designated Contract at issue; and (d) states, with particularity, the basis and nature of any objection to the assumption and assignment, cure cost, and/or adequate assurance of future performance.

8.      Objections that are not resolved or withdrawn prior to the Sale Hearing will be addressed at the Sale Hearing (which will be held before the Court on **November 15, 2022**, at **12:00 p.m.** (prevailing Central Time) at 515 Rusk Street Courtroom 400, Houston, Texas 77002) unless otherwise agreed by the Debtor, the Winning Bidder, and the counterparty to the applicable Designated Contract.  Participation in the hearing may be in person or by an audio and video connection, as set forth in the Bid Procedures Motion.

9.      The Winning Bidder shall pay all undisputed cure amounts on or as soon as reasonably practicable after consummation of the Sale.

10.     The Debtor reserves the right to reject, and not assume and assign, any executory contract or unexpired lease as a result of the ultimate resolution of any objection to assumption and assignment, cure cost, or adequate assurance of future performance.

11.     Except as otherwise ordered by the Court, any party or entity that fails to timely object to the assumption and assignment of a Designated Contract on or before the objection deadline in accordance with the Bid Procedures Order shall be forever barred from asserting any objection to the assumption and assignment of such Designated Contract, the proposed cure cost, or adequate assurance of future performance.  Any counterparty to a Designated Contract that fails to object to the proposed assumption and assignment by the objection deadline will be deemed to assent to the assumption of the Designated Contract on the terms set forth in the Assignment Notice.

12.     **Assumption and assignment of any Designated Contract shall result in the full release and satisfaction of any cures, claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption.  Any and all proofs of claim based upon executory contracts or unexpired leases that have been assumed in the chapter 11 cases, including pursuant to the Sale Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Court (including the Sale Order) approving such assumption and (2) the effective date of such assumption without the need for any objection thereto or any further notice to or action, order, or approval of the Court.**

Houston, Texas
Dated: September [●], 2022

/s/ *Rebecca Blake Chaikin*
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Genevieve M. Graham (TX Bar No. 24085340)
Veronica A. Polnick (TX Bar No. 24079148)
Javier Gonzalez (TX Bar No. 24119697)
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: rchaikin@jw.com
Email: ggraham@jw.com
Email: vpolnick@jw.com
Email: jgonzales@jw.com

**COUNSEL FOR THE DEBTOR
AND DEBTOR IN POSSESSION**

**<u>Exhibit D</u>**

**Assignment Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| LAFORTA - GESTÃO E INVESTIMENTOS, | § | Case No. 22-90126 (DRJ) |
| SOCIEDADE UNIPESSOAL LDA.,[1] | § |  |
|  | § |  |
| Debtor. | § | **Re: Docket No._____** |
|  | § |  |

**NOTICE OF ASSUMPTION AND ASSIGNMENT OF DESIGNATED CONTRACTS**

**PLEASE TAKE NOTICE:**

On June 16, 2022 (the "Petition Date"), the above-captioned debtor and debtor in possession (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

On August 24, 2022, the Debtor filed a motion [ECF 92] (the "Bid Procedures Motion") with the Court seeking entry of orders, among other things authorizing and approving (a) the sale of the Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests except to the extent otherwise set forth in the purchase agreement executed by the Debtor and the Winning Bidder, (b) the assumption and assignment of Designated Contracts (if any), and (c) granting related relief.[2]

On September [•], 2022, the Court entered an order [ECF [•]] (the "Bid Procedures Order") approving, among other things, the Assumption and Assignment Procedures, which establish the process by which any executory contracts designated by the Winning Bidder shall be assumed and assigned to the Winning Bidder. **All recipients of this notice should carefully read the Bid Procedures Order and the Assumption and Assignment Procedures in their entirety.**

On [•], 2022, the Debtor filed with the Court the notice attached as **Schedule 1**, disclosing the Winning Bid [and Backup Bid], which included a list of Designated Contracts. The inclusion of a contract shall not (a) obligate the Debtor to assume or assign such contract or (b) constitute any admission or agreement by the Debtor that such contract is an executory contract. Only those contracts that are included on a schedule of assumed and acquired contracts attached to definitive documentation in the Sale that is approved by the Sale Order will be assumed and assigned.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's Foreign tax identification number, is: LaForta - Gestão e Investimentos, Sociedade Unipessoal, Lda (Zona Franca da Madeira) (5988).

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Bid Procedures Motion.

1

Copies of the Bid Procedures, Bid Procedures Motion, and the Bid Procedures Order, and all other documents filed with the Court, are available free of charge on the Debtor's case information website, located at https://cases.stretto.com/LaForta/.

## Assignment of Designated Contracts to the Winning Bidder

You are receiving this notice because you are a counterparty to the executory contract(s) listed on **Schedule 2** hereto, which the Debtor is proposing to assume and assign to the Winning Bidder in connection with the Sale.

Section 365(b)(1) of the Bankruptcy Code requires a debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. **Schedule 2** sets forth the proposed cure cost (if any) according to the Debtor's records that is required pursuant to section 365(a) of the Bankruptcy Code. **The proposed cure cost represents all monetary defaults of any nature that the Debtor believes are or may be outstanding under the Designated Contract prior to the closing of the Sale. If you believe the proposed cure cost is listed with an incorrect amount, you <u>must</u> object in accordance with the procedures described in this notice by no later than the objection deadline set forth below under the heading "Important Dates and Deadlines."**

Section 365(a) of the Bankruptcy Code conditions assignment on the Winning Bidder providing "adequate assurance of future performance." Counterparties to Designated Contracts may request adequate assurance of future performance by the Winning Bidder or Backup Bidder by contacting (a) the CRO, David Weinhoffer (davidw@macco.group) and (b) counsel to the Debtor, Jackson Walker LLP, Rebecca Blake Chaikin (rchaikin@jw.com), Genevieve M. Graham (ggraham@jw.com), Veronica A. Polnick (vpolnick@jw.com), and Javier Gonzalez (jgonzales@jw.com). Such adequate assurance will be provided by electronic mail and may be provided on a confidential basis for all nonpublic information.

To the maximum extent permitted by law, to the extent any provision in any Designated Contract assumed and assigned pursuant to the Sale Order restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Designated Contract (including any "change in control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Sale Order and any definitive documentation for the Sale shall not entitle the non-Debtor party thereto to terminate such Designated Contract or to exercise any other default-related rights with respect thereto, unless such non-Debtor party thereto properly and timely files an objection and such objection is not overruled, withdrawn or otherwise resolved.

## Important Dates and Deadlines[3]

The Bid Procedures Order and Assumption and Assignment Procedures include a number of dates and deadlines, only a few of which are highlighted here:

---

[3]   The following dates and deadlines may be extended by the Debtor (with the consent of the Backstop Lenders) by filing a notice with the Court, pursuant to the Bid Procedures.

- **Deadline to Object to the Sale.** Objections to the Sale (or the assumption and assignment of any Designated Contract, including objections to the proposed cure cost or adequate assurance of future performance by the Winning Bidder) must be filed with the Court by **November 11, 2022**, at **4:00 p.m.** (prevailing Central Time) and otherwise meet the requirements set forth in the Bid Procedures Order.

  - Any objection to the assumption and assignment of a Designated Contract ***must***: (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state the name and address of the objecting party and identify the Designated Contract at issue; (d) state, with particularity, the basis and nature of any objection to the assumption and assignment, cure cost, and/or adequate assurance of future performance; and (e) be filed with the Court with proof of service thereof so as to be actually received on or before the objection deadline.

- **Sale Hearing.** A hearing to consider approval of the proposed Sale (including assignment of Designated Contracts) will be held before the Court on **November 15, 2022**, at **12:00 p.m.** (prevailing Central Time) at 515 Rusk Street Courtroom 400, Houston, Texas 77002. Participation in the hearing may be in person or by an audio and video connection, as set forth in the Bid Procedures Motion.

### <u>Consequences of Failing to Timely Assert an Objection</u>

Except as otherwise ordered by the Court, any party or entity that fails to timely make an objection to the Sale on or before the objection deadline in accordance with the Bid Procedures Order and this notice shall be forever barred from asserting any objection to the Sale, including with respect to (a) the transfer of the assets free and clear of all liens, claims, encumbrances, and other interests and (b) the assumption and assignment of a Designated Contract, proposed cure cost, or adequate assurance of future performance. Any counterparty to a Designated Contract that fails to object to the proposed assumption and assignment by the objection deadline will be deemed to assent to the assumption of the Designated Contract on the terms herein.

**Assumption and assignment of any Designated Contract shall result in the full release and satisfaction of any cures, claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. Any and all proofs of claim based upon executory contracts or unexpired leases that have been assumed in the chapter 11 cases, including pursuant to the Sale Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Court (including the Sale Order) approving such assumption and (2) the effective date of such assumption without the need for any objection thereto or any further notice to or action, order, or approval of the Court.**

Houston, Texas
Dated: September [●], 2022

/s/
_____
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Genevieve M. Graham (TX Bar No. 24085340)
Veronica A. Polnick (TX Bar No. 24079148)
Javier Gonzalez (TX Bar No. 24119697)
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: rchaikin@jw.com
Email: ggraham@jw.com
Email: vpolnick@jw.com
Email: jgonzales@jw.com

**COUNSEL FOR THE DEBTOR**
**AND DEBTOR IN POSSESSION**

4

**<u>SCHEDULE 1</u>**

**Notice of Winning Bid**

## **SCHEDULE 2**

| Designated Contract(s) Title and/or Description | Counterparty Name and Address | Proposed Cure Cost (if any) |
| --- | --- | --- |
| | | |